RECEIVED

5-23-14

MAY 2 3 2014

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

GREGORY ALEX,       )

      Plaintiff,       )

vs.       )

THE CITY OF CHICAGO; THE CHICAGO       )
PUBLIC SCHOOLS; THE BOARD OF       )
EDUCATION OF CHICAGO, IL; and       )
MYRON L. HESTER (Principal), in his       )
Official and Individual Capacities,       )

      )

      Defendants.       )

14cv3821
Judge Charles R. Norgle, Sr
Magistrate Sidney I. Schenkier

### COMPLAINT AND JURY DEMAND

Plaintiff, GREGORY ALEX, representing himself "*pro se*," do hereby submit the following Complaint and Jury Demand against Defendants: THE CITY OF CHICAGO, THE CHICAGO PUBLIC SCHOOLS, THE BOARD OF EDUCATION OF CHICAGO, and MYRON L. HESTER, "Principal," in his Official and Individual capacities, hereinafter referred to as "Defendants" In support thereof, Plaintiff submits the following:

This action alleges violations of Due Process, pursuant to the Fifth Amendment to the U. S. Constitution; Equal Protection, pursuant to the Fourteenth Amendment of the U. S. Constitution; Title VII of the Civil Rights Act of 1964; Title IX of the Educational Amendments of 1972; Sexual Harassment; Fraud, Defamation of Character, Slander, Libel, and Emotional Distress. In filing this claim, Plaintiff is exercising his First Amendment Right to petition the government for a redress of grievances, and his Seventh Amendment Right to a trial by jury.

This cause of action arises from Plaintiff's departure from a position he'd been deemed qualified for, due to the illegal and fraudulent actions of Defendants. Plaintiff alleges that the arbitrary and capricious manner in which Defendants acted in determining his fitness for continued employment, was illegal and against his constitutional and civil rights. Defendants took no steps to verify the false,

defamatory and slanderous statements made against Plaintiff, indicating he was involved in a "sexual harassment complaint," among other "sexual" things. Part of the damages Plaintiff alleges is that his dismissal from a newly acquired position was procured through fraud, deception, constitutional rights violations, was for purely personal reasons, was illegal and was arbitrary and capricious.

Plaintiff does not allege that his dismissal violated any of his constitutional rights. Moreover, plaintiff frankly concedes that his dismissal complied with the minimal procedural requirements imposed by applicable federal law for probationary employees. Plaintiff simply contends that his discharge was procured illegally through fraud arbitrarily and capriciously. He urges this Court to exercise review only on that basis. Plaintiff seeks judicial review as to the question of whether the procedures used to determine his fitness for continued employment were "arbitrary and capricious," defamatory, slanderous, libelous, and illegal by nature. ***"... all three courts concluded that they had the power to exercise the sort of limited review requested by plaintiff in this case."*** Lutz v. U.S. Postal Service, 538 F. Supp. 1129 (E.D.N.Y.

Defendants failed to follow their own standards, policies and procedures prior to passing judgment upon Plaintiff. Further, Defendants, causing to come into existence a "sexual hostile environment," created a hostile work environment towards Plaintiff and interfered with the efficient functioning of the office. The method and standard exhibited by Defendants were not legal, fair nor reasonable, and all resulting decisions were not exercised and put forth in good faith.

> ***Federal judges do not sit as ombudsmen for government employment relations citing Bishop v. Wood nor do we indulge in the conceit of substituting our own judgment ad libitum for that of the agency. Rather, we concern ourselves in the personnel business only insofar as is necessary to assure that the action challenged (1) is not arbitrary or capricious; (2) was reached in conformity with relevant procedural requirements; and (3) was not otherwise unconstitutional." Doe v. Hampton 184 U.S. App. D.C. 373, 566 F.2d 265, 271-72 (D.C. Cir.1977)***

Due to the sexual nature of comments made against Plaintiff in an email created, and passed on by Defendants on November 21, 2013, Defendants had a duty to further investigate and treat this matter

in the manner as per policy. The written and verbal communication connecting Plaintiff with a "sexual" situation warranted further review. Documents will show that Defendants used an invalid, unsigned document not pertaining to the business of Defendants and Plaintiff, and arbitrarily and capriciously ended his booming career. It is clear that Defendant's action were not based upon consideration of relevant factors in regards to Plaintiff's career, future, reputation, and ability to support himself. Their actions in depriving Plaintiff of his Constitutional, Human and Civil Rights were so arbitrary, capricious, and an abuse of power, that it was not in accordance with Illinois law. Natural Resources Defense Council, Inc. v. United States EPA, 966 F.2d 1292, 1297 (9th Cir. 1992). Defendant's actions against Plaintiff were not supported by logic or the necessary facts to justify such judgment made against him. Defendant's actions are the proximate cause of damages sustained by Plaintiff, to wit: lost wages, damage to his career and future earning potential; intentional infliction of emotional, mental suffering and distress, pain and suffering; violation of due process of the laws and equal protection; and effectively denying Plaintiff access to educational opportunities within his chosen field. This is a case of willful and wanton conduct by Defendants and an intentional effort to cause damage to Plaintiff.

> *Although the Supreme Court's opinion in Bishop concludes with rather sweeping language (which might lend itself to some misinterpretation), one recent decision correctly observed that "many federal district courts and courts of appeals nevertheless have found that the decision in Bishop v. Wood does not preclude review of personnel decisions made by government employers, even in the absence of any allegation of a violation of constitutional rights." Ross v. United States Postal Service, 556 F. Supp. 729, 732 (N.D. Alabama 1983). The Court noted that there is still ample precedent "for providing a narrowly limited review of personnel decisions made by the Postal Service" to determine "whether its actions were arbitrary or capricious" Id. 733.*

Plaintiff had a liberty interest in freedom from being unfairly and unreasonably judged, in an arbitrary and capricious manner. He therefore, brings forth this 11-Count action. Plaintiff's tort claims are inextricably linked to a Civil Rights violation, thus, the Court may exercise jurisdiction over these tort claims as well.

## I. JURISDICTION AND VENUE

1. This court has jurisdiction pursuant to Illinois Supreme Court Rules 10-100(a), governing access to justice to establish, promote, facilitate, and enhance equal access to justice with an emphasis on access to the Illinois civil courts and administrative agencies for all people, particularly the poor and vulnerable.

2. A plaintiff with a claim for relief under the Civil Rights Act, 42 U. S.C., is not required to exhaust state judicial remedies. See, e. g., Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

3. This Court has jurisdiction over actions brought under Title VII of the Civil Rights Act of 1964, which governs hostile work environments.

4. Federal courts have exercised their inherent power of review over "arbitrary or capricious" agency action. Jordan v. Bolger, 522 F. Supp. 1197 (N.D. Miss. 1981), affirmed, 685 F.2d 1384 (5th Cir. 1982).

5. This is also an action to redress the deprivation of Plaintiff's Constitutional rights under the 5th and 14th Amendment of the U.S. Constitution pursuant to 42 U.S.C. 1981.

6. Plaintiff brings this action to redress his right to due process, defamation of character, slander, and libel pursuant to 42 U.S.C. § 1983, and 28 U.S.C., § 1331.

7. It is well settled that in appropriate cases, the federal courts may grant relief from prior actions, decisions and judgments obtained by fraud. Marine Ins. Co. v. Hodgson, 11 U.S. (7 Cranch) 332 (1813); See FED. R. Civ. P. 60(b)

8. Venue is proper in this district since all defendants reside or resided in this district; or did business in this district, and the events giving rise to claims occurred in this district.

9. Venue is proper in this district pursuant to 28 U.S.C. 1391(b), since all Defendants reside or resided in this district and the events giving rise to the claims occurred in this district.

## II. THE PARTIES

10. Plaintiff is a U.S. Citizen and a former public employee of the Board of Education of Chicago. He has been a resident of Chicago his entire life.

11. At all material times, Plaintiff was a resident of the City of Chicago, County of Cook, State of Illinois.

12. At the time of the events as stated herein, Plaintiff was a probationary employee working within the Chicago Public School System.

13. Defendants, The City of Chicago, is a Municipal Corporation, doing business as a public, educational entity in the City of Chicago, State of Illinois.

14. Defendants, The Board of Education of Chicago and The Chicago Public Schools, is a public education institution located in the State of Illinois, City of Chicago.

15. At all material times, Defendant Myron L. Hester ("the Principal"), in his official and individual capacities, worked and lived within the State of Illinois.

## III. APPLICABLE LAW AND POLICY

16. The Fourteenth Amendment to the United States Constitution provides in pertinent part, that no State shall "deny to any person within its jurisdiction, the equal protection of the laws." U.S. Const. Amend. XIV, §1.

17. 28 U.S.C., § 1331 states in pertinent part that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

18. 28 U.S.C. § 1343 provides Plaintiff with the right to damages and redress when deprived of his liberty, rights and property.

19. The Fifth Amendment to the United States Constitution provides in pertinent part, that no person shall be deprived of life, liberty, or property, without due process of law.

20. Title VII of The Civil Rights Act of 1964 provides against a hostile work environment, warding off "discussions" of a sexual nature.

21. Defamation of Character is defined by District Courts as *"Any intentional false communication, either written or spoken, that harms a person's reputation; decreases the respect, regard, or confidence in which a person is held; or induces disparaging, hostile, or disagreeable opinions or feelings against a person."* A private citizen's reputation and privacy interests tend to outweigh free speech considerations and deserve greater protection from the Courts. See *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S. Ct. 2997, 41 L. Ed. 2d 789 [1974].

22. Fraud is defined by District Courts as being stripped of something by someone using dishonest, unfair, unreasonable methods. *"The power of the federal courts appears to be expressly recognized in rule 60(b) of the Federal Rules of Civil Procedure, which states in part: this rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding."*

23. Slander is defined by District Courts as "Oral defamation, in which someone tells one or more persons an untruth about another which untruth will harm the reputation of the person defamed. Slander is a civil wrong (tort) and can be the basis for a lawsuit." The slander must, of course, be published, that is, communicated to a third person.

24. Libel is defined by District Courts as "To publish in print, an untruth about another which will do harm to that person or his/her reputation, by tending to bring the target into ridicule, hatred,   scorn or contempt of others. It is a tort (civil wrong) making the person or entity open to a lawsuit for damages by the person who can prove the statement about him/her was not true.

25. Intentional Infliction of Emotional Distress is defined by Courts as, "A claim of damages in lawsuits for injury due to the negligence or intentional acts of another. Recently

courts in many states, including New York and California, have recognized a right to an award of money damages for emotional distress without physical injury or contact.

## IV. COMMON ALLEGATIONS

26. Plaintiff, GREGORY ALEX, an aspiring 25-year-old gentleman, holding a Bachelor's degree in "Recreation, Sports and Tourism," began his career at the City of Chicago, Chicago Public School System / The Board of Education of Chicago, in September, 2013.

27. While working at Kozminski Academy, located at 936 E. 54th Street Chicago, Illinois 60615 and due to having to work in a hostile sexual environment, Plaintiff took steps to remove himself from said environment, by applying for and being hired for a new position, located at Ellington Elementary School in Chicago, IL.

28. By all indications, Plaintiff was moving up the ladder of success rather quickly.

29. Plaintiff, with a promising career and future, passed two major employment interviews with Defendants within a 6-month period.

30. On or about December 19, 2013, Plaintiff's dream to move up and excel in his chosen career and field came to an abrupt end. Although he received high praise at the job he'd just been deemed eligible for, and he left Kozminski Academy with no write-ups in his employee file, Plaintiff was terminated due to the arbitrary and capricious manner in which Defendants acted regarding his fitness for continued employment.

31. Defendant Myron L. Hester wrote an email on November 21, 2013 and falsely accused Plaintiff of being involved in a sexual harassment complaint and other sexual issues, hence, defamation of character, fraud, slander, and libel; in addition to being subjected to a hostile work environment and Civil Rights violations.

32. Pursuant to the U.S. Department of Labor, *"A hostile environment can result from the unwelcome conduct of supervisors, co-workers, customers, contractors, or anyone else with whom the victim interacts on the job, and the unwelcome conduct renders the workplace atmosphere intimidating, hostile, or offensive. Examples of behaviors that may contribute to an unlawful hostile environment include: discussing sexual activities"*

33. In January, 2014, Plaintiff exercised his right to request his employee file to gain some insight as to why he was terminated when he was getting such high praise from staff at his new location and had never been written up or disciplined at his previous location.

34. Upon receipt of the contents of his employee file, Plaintiff noticed there was just one document: An email dated November 21, 2013. (Exhibit A)

35. In the email dated November 21, 2013, Defendants created and passed along to others, false, slanderous and defaming statements against Plaintiff.

36. Defendants accused Plaintiff of being charged with in sexual harassment complaint, based on an "incident report," written out by Lisa McDonald, a non-CPS employee and bus aide.

37. The incident report was not signed, bears no signature of anyone of authority, it does not indicate it was passed on to anyone, except Plaintiff's place of work, it had not been filed with any agency or governing body; and did not suggest sexual harassment. (Exhibit B)

38. It is common knowledge that sexual harassment occurs "in the workplace." The bus aide did not work where Plaintiff worked, and the email of November 21, 2013 starts out about an incident that occurred on Plaintiff's unpaid lunch break, off work property. 42 U.S.C.A. § 2000e et seq.

39. Defendants never saw a Sexual Harassment Complaint, however, they accused Plaintiff of it anyway.

40. The only person Plaintiff stood before, was not a tribunal, hearing, Board or other persons outside of where he worked, but rather, "only" Defendant, Myron L. Hester, the Principal and individual that created, and passed on the email of November 21, 2013.

41. Therefore, the very person that falsely accused Plaintiff via the email, is the one that decided his fate.

42. Plaintiff contends it is Defendants that brought "sexual harassment" and sexual tones into play.

43. Sexual harassment is "repeated" inappropriate towards another person while on the job.

44. Defendants named just *one* incident in his email which alleges someone "asked" Plaintiff a question about a crumb. By Federal Standards, that does not constitute sexual harassment, nor did the incident actually happen.

45. Defendant's defamatory statements are per se. The words used against Plaintiff are so obviously and materially harmful to him, that injury to his reputation, ability to earn a living, and work in his chosen field and profession, is well presumed. Bryson v. News American Publication 174 Ill. 2d 77 (1996).

46. As a person of authority, Defendants knew or should have know that what the non-CPS employee filled out, did not contain the elements of sexual harassment, was not sexual harassment, nor did it involve City of Chicago, Board of Education and Chicago Public School business.

47. Defendants, in accusing Plaintiff of being involved in a sexual harassment complaint, was not acting in the scope of their business; and acted in an arbitrary manner thereof.

48. The false statements in Defendant's email of November 21, 2013, were the very reason Plaintiff was "terminated" from his new position, indicating a fraudulent act.

49. The email of November 21, 2013, indicates that, instead of Defendants simply ending Plaintiff's employment, a reason that wasn't particularly needed, was in fact given and used against him.

50. Defendant's defamatory, slanderous, false statements made against Plaintiff impeached his reputation, which in effect, lowered him in the estimation of the community, and has the potential to lower it in the future.

51. Defendant's defamatory, false statements made against Plaintiff deterred another party from associating with him. Kolegas v. Heftel Broadcasting Corp., 154 Ill.2d 1, 607 N.E.2d 201, 180 Ill. Dec. 307 (1992).

52. Defendant's defaming statements caused and led to Plaintiff's disassociation from the position he had just been deemed eligible for, and was excelling in.

53. When Defendants "gave a reason" for terminating Plaintiff, when a reason was not needed as a probationary employee, that made his exit from his employment with Defendants, based on that very "reason" which supports his claim of arbitrary and capricious.

54. Plaintiff's damages and termination was due to arbitrary and capricious manner in which Defendants handled Plaintiff's termination and the email of November 21, 2013.

55. That action prejudiced Plaintiff's new position which imputed a lack of ability in Plaintiff's trade, career and profession.

## COUNT I
## VIOLATION OF THE 5TH AMENDMENT OF THE U.S. CONSTITUTION
## PROCEDURAL DUE PROCESS
*Defendant's Deliberate Indifference to False, Defamatory Statements*
*were Arbitrary and Capricious, and Deprived Plaintiff of Due Process of the Law*

56. Paragraphs one through 55 are incorporated by reference as if stated in full herein.

57. Defendants violates Plaintiff's right to Due Process under the Fifth Amendment to the United States Constitution by conducting a proceeding that was not factually related with respect to proof of the claims made against him.

58. Plaintiff's dismissal resulted from "such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." 474 U.S. at 225.

59. Due Process requires "minimum standards" of protection and fundamental fairness, which is lacking in this case. Dunmar v. Ailes, 348 F.2d 51, 54 (D.C. Cir. 1965).

60. Plaintiff, as a public, educational employees, could not be denied property or liberty rights without due process of law. Liberty rights include things such as a person's reputation (i.e., being accused of acts damaging to a person's reputation).

61. Defendant's false allegation that a sexual harassment complaint had been filed against Plaintiff was so severe, pervasive and objectively offensive that it deprived Plaintiff of access to an educational career within his chosen field and stripped him of the benefits provided by the school when hired to a better position, based on the arbitrary and capricious manner in which Defendants acted.

## COUNT II
## VIOLATION OF THE 14TH AMENDMENT
## OF THE U.S. CONSTITUTION -- 42 U.S.C. § 1981

*Though a U.S. Citizen, Plaintiff's "Probationary" Status Stripped Him of Equal Protection*

62.   42 U.S.C. § 1981 (1970) provides: ***"All persons within the jurisdiction of the United States shall have the same right in ever State and Territory to make and enforce contracts, to sue, be parties, give evidence and to the full and equal benefit of all laws and proceedings..."***

63.   Paragraphs one through 62 are incorporated by reference as if stated in full herein.

64.   Plaintiff's Federally protected interests were implicated, thus, it was paramount that he exercised his right to some kind of prior hearing, other than the arbitrary and capricious one conducted by Defendants. *"But the range of interests protected by procedural due process is not infinite."* Board of Regents v. Roth, 408 U.S. 564, 569-71 (1972). Developments under the Fifth Amendment's due process clause have been interchangeable. *Cf.* Arnett v. Kennedy, 416 U.S. 134 (1974).

65.   Plaintiff also had a liberty interest in freedom from wrongfully or excessively administered corporal punishment, whether or not such interest was protected by statute.

66.   The Equal Protection Clause requires each state to provide equal protection under the law to "all people" within its jurisdiction.

67.   Under the Fourteenth Amendment, Plaintiff had the right as an educational employee, to bodily integrity and equal protection of the laws, and that his fate not be judged arbitrarily and capriciously.

68.   Defendants were all state actors, acting under the color of State Law.

69.   No one ever never asked to see the sexual harassment complaint Plaintiff was said to be involved in, as per Defendant Myron L. Hester's email of November 21, 2013.

70.   Plaintiff has suffered emotional distress, lost wages, mental suffering, and his character and standing in his community has suffered from the baseless sexual harassment claim, and manner in which Defendants acted, which fostered as a direct and proximate result of Defendant's deliberate indifference to Plaintiff's welfare and well-being.

71.   Immediately after being made aware of a "private matter," Defendant Myron L. Hester, instead of removing himself and remaining focused on the business he was hired to perform, he used that matter, that was not sexual harassment, against Plaintiff.

72.   If another U.S. Citizen that worked at the same location as Plaintiff, and had the exact same issue happen they would have been treated differently and the matter would have been handled differently, because they were not labeled " probationary."

73.   Because of a label placed upon Plaintiff by Defendants, his right to equal protection of the laws were compromised.

74. Plaintiff contends, Federal law, Constitional, Civil and Human Rights does not change or disappear simply by working at a particular place, nor does where a person works give another person the right to harm or damage someone.

75. The very protections the U.S. Constitution provides to Plaintiff, are the ones that Defendants stripped him of.

## COUNT III
## ARBITRARY AND CAPRICIOUS BOARD ACTION AGAINST PLAINTIFF
*The Manner Used to Determine Plaintiff's Continued Fitness For Employment Was Illegal*

**76.** Pursuant to the Chicago Public Schools Policy Manual, Section 500A.1, Board Report No.: 04-0728-PO1, "At-will employees may be discharged from employment with or without cause..."

77. As a probationary employee, Plaintiff's argument is not that the with or without cause was carried out, but rather, "the manner" in which the "with cause" was conducted.

78. Defendants accused Plaintiff of being involved in a sexual harassment claim. Federal law state that those accused of sexual harassment are the same as those accused of a tort... they have the right to air their defense in a fair, impartial tribunal.

79. Defendants never requested to see any true and accurate documentation pertaining to Plaintiff being involved in a sexual harassment complaint.

80. Defendants violated State and Federal law by arbitrarily and capriciously determining Plaintiff's fitness for continued employment, despite clear and convincing evidence that he was doing a good job and was accepted into a new position.

## COUNT IV
### Violation of Title IX of the Educational Amendments of 1972
### 20 U.S.C. § 1681 (a)
*Defendants Discussed Sexaul Issues with Plaintiff, and Used It Against Him Causing Damages*

81. Paragraphs one through 80 are incorporated by reference as if stated in full herein.

82. Plaintiff meets the standards and requirements as set forth concerning the elements of a hostile work environment based on:

    a) He was subjected to the false allegation and accusal of sexual harassment, which is a form of sexual assault by the Principal.

    b) Sexual issues were discussed with Plaintiff, by Defendants, which had nothing to do with his job performance, school employees or his official duties.

    c) He was subjected to a hostile educational environment created by the Principal's lack of policies and procedures in dealing with private matters between two adults; and failed to properly investigate and or address the false allegation of a sexual harassment complaint.

83.    Defendants actually had no knowledge of a sexual harassment complaint. The resulting harassment of Plaintiff in the workplace, was created by Defendant's failure to investigate.

84.    Due to Defendant's arbitrary and capricious manner in handling a sexual harassment allegation, Plaintiff was denied the benefits of education programs and involvement in violation of Title IX.

85.    Defendants persisted in its actions and inaction even after it had actual knowledge of the harm suffered by Plaintiff; and that no sexual harassment complaint had ever been filed.

86.    Defendants engaged in a pattern and practice of behavior designed to discourage and dissuade individuals accused of a criminal act by it's employees.

87.    Plaintiff has suffered emotional distress, lost wages, mental suffering, and his character and standing in his community has suffered from the baseless sexual harassment claim, which Defendants fostered as a direct and proximate result of Defendant's deliberate indifference to the severity of a false sexual harassment complaint.

## COUNT V
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### 42 U.S.C; 524 U.S. 775
*Defendants Subjected Plaintiff to Sexual, Hostile Work Environment*

88.    Paragraphs one through 87 are incorporated by reference as if stated in full herein.

89.    Plaintiff, while standing in the office of Defendant, Myron L. Hester, found himself being subjected to having to listen to and discuss a sexual issue that had nothing to do with his employment or work performance.

90.    Plaintiff contends, after putting forth hard work and adhering to company rules and policies, as a citizen of the United States, he was entitled to rights.

> *The Ordinance defines sexual harassment as "any unwelcome sexual advance, request for sexual favors, or conduct of a sexual nature when (a) submission to such conduct is an explicit or implicit term or condition of an individual's employment; or (b) submission to or rejection of such conduct by an individual is used as the basis for any employment decision affecting the individual; or (c) such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment."* § 42–35(e) (2002).

91.    Plaintiff had a right to go to work and not be faced or subjected to sexual comments or actions from his supervisor or any employees for that matter.

92.    Defendant's sexual comments about Plaintiff sabotaged his new position, his work, his career, his future, and his ability to support himself.

93. Defendants had every right to terminate Plaintiff's employment at the end of his probationary period. However, in the instant case, his termination was not based on policy and procedure, but was based upon the arbitrary and capricious manner in which his termination was handled.

## COUNT VI
## SEXUAL HARASSMENT
### Title VII of the Civil Rights Act of 1964
*Defendants Associated Plaintiff With Sex Via Written and Verbal Actions*

94. Paragraphs one through 93 are incorporated by reference as if stated in full herein.

95. The Act goes on to state that it is a "civil rights violation" for any employer or employee "to engage in sexual harassment." 775 ILCS 5/2-102(D) (West 1994)

96. Defendant confronting Plaintiff with a "sex" issue, caused and led to the emotional damages as stated herein.

97. Plaintiff contends, Defendants communication concerning sexual issues was uncomfortable and stressful, and were not related to his employment or official duties.

98. Defendant's conduct interferred with Plaintiff's duties at work, and subsequently his fate as an employee.

99. Defendant's actions and comments created an intimidating, hostile and offensive work environment for Plaintiff. 775 ILCS 5/2-101(E) (West 1994).

100. Plaintiff learned from the email of November 21, 2013 of yet another sexual situation Defendants had associated him with. An incident about crumb on Plaintiff's face was created, that never happened. It was written in a sexual manner.

101. While at Kozminsky Academy, Plaintiff was faced with another sexual situation. Workers, hearing about the Principal speaking to Plaintiff about a sexual situation, approached him as well.

## COUNT VII
## DEFAMATION OF CHARACTER
*The email of November 21, 2013 defamed the character of Plaintiff and was Handled Arbitrarily and Capriciously*

102. Paragraphs one through 101 are incorporated by reference as if stated in full herein.

103. Plaintiff, as a private figure, need not demonstrate actual malice, but "must bear the burden of showing that the statements at issue are false before recovering damages for defamation. Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 777, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986).

104. Defendant's email of November 21, 2013, meant and intended to convey that substantial questions are raised as to whether Plaintiff was a man with sexual hangups and issues. That is a false perception.

105. Defendants created a clear impression that Plaintiff is unfit to work in his chosen field, in a position he'd just been deemed elibible for.

106. Defendant's email "created a false implication that Plaintiff was to be avoided because of his sexual ways. Defendants depicted Plaintiff as someone or something which he is not.

107. Plaintiff's Exhibit A is the email of November 21, 2013. It clearly makes several sexual accusation against and pertaining to him, that was not investigated, verified, nor looked into by Defendants, indicating an arbitrary and capricious act, as well as aiding and abetting.

108. According to the Doctrine of Respondeat Superior, the employer is responsible for the actions of his employee, within the course of their employment.

> *Here, in contrast, Stanton has alleged that Metro defamed her by making a statement susceptible to the interpretation that she engages in sexually promiscuous behavior. That statement is clear enough to support a defamation claim, particularly under the circumstances. See Restatement (Second) of Torts § 566 cmt. e (1977) ( "Words uttered face to face during an altercation may well be understood merely as abuse or insult, while words written after time for thought or published in a newspaper may be taken to express the defamatory charge and to be intended to be taken seriously."*

109. Defendants, creating and passing along the statements were done with malice with the intent to cause Plaintiff harm.

> *Thus, in deciding whether a statement is susceptible to a defamatory interpretation, the court must gauge the reasonableness of the interpretation based on what a considerable and respectable segment of the community would make of the statement. Our recent decision in Amrak makes this clear. There, the plaintiff claimed that the defendants had "portrayed [him] as a homosexual by miscaptioning a picture of a homosexual individual with [the plaintiff's] name" in their publications. 410 F.3d at 71.*

110. Defendants statements written and spoken about Plaintiff defamed his character and led to his dismissal.

111. Just the sexual harassment comments alone, causes Plaintiff damage. Those words in "anyone's" file can damage their future and their livelihood.

> *"... we must "give weight to cautionary terms used by the person publishing the statement," Myers v. Boston Magazine Co., 380 Mass. 336, 341-42, 403 N.E.2d 376, 379 (1980), the non-defamatory character of a statement will rarely depend solely on the presence of qualifying language. See, e.g., Cole v. Westinghouse Broad. Co., 386 Mass. 303, 309-12, 435 N.E.2d*

*1021,1025-27 (1982) (considering speaker's characterization of statement about plaintiff's firing as "unofficial" as one factor in whether statement defamatory); Restatement (Second) of Torts § 563 cmt. c (1977) ("A conditional or alternative statement may be defamatory if, notwithstanding its conditional or alternative form it is reasonably understood in a defamatory sense.").*

## COUNT VIII
## SLANDER
*The Email of November 21, 2013 was written and passed on to other about Plaintiff*

112.  Paragraphs one through 111 are incorporated by reference as if stated in full herein.

113.  Defendant's false statements made against Plaintiff were spoken. Illinois recognize oral defamatory statements as Slander.

114.  At Plaintiff's place of employment, of all places, he was forced to stand before his boss, and discuss a sexusl personal, private matter, verbally. That encounter led to his writing in and sending it electronically, to others.

115.  Plaintiff has no idea how many people read or saw the email, which will continue to cause stress, emotional distress and damage upon him, due to the uncertainty of it and the fact that it was sent electronically.

116.  Punitive Damages are recoverable upon an award of Slander. Plaintiff reserves the right to request leave at a later date, to plead Punitive Damages.

## COUNT IX
## LIBEL
*The email of November 21, 2013 was verbal, and spoken to others, damaging Plaintiff*

117.  Paragraphs one through 116 are incorporated by reference as if stated in full herein.

118.  Defendant's efamatory, false statements made against Plaintiff were written. Illinois recognize written defamatory statements as libel.

> *408 Ill. 512, 518, 97 N.E.2d 343, 346, 347. Illinois law requires that, for the defense to prevail, the truth of all facts in the utterance must be shown together with good motive for publication. People v. Strauch, 247 Ill. 220, 93 N.E. 126; People v. Fuller, 238 Ill. 116, 87 N.E. 336; cf. Ogren v. Rockford Star Printing Co., 288 Ill. 405, 123 N.E. 587.*

119.  Plaintiff has met his burden in proving to this Court that Defendant's statements were false. In the alternative, Defendants are uanable to prove they were true.

> *Because "[t]he meaning of these statements is imprecise and open to speculation . [t]hey cannot be proved false" and therefore "cannot be held libellous." Cole, 386 Mass. at 312, 435 N.E.2d at 1027.*

120. A writing is a libel if, in view of all relevant circumstances, it discredits the plaintiff in the minds, not of the court, nor of wise, thoughtful, and tolerant men, nor of ordinary reasonable men, but of any considerable *and respectable class in the community.* Ingalls v. Hastings & Sons Publ'g Co., 304 Mass. 31, 33, 22 N.E.2d 657, 658-59 (1939).

> *"... disparaging statements were false or that the defendant was in reckless disregard of this falsity." Pecora v. Szabo, 9 Ill.App.3d 57, 418 N.E.2d 431, 49 Ill.Dec. 577 (2nd Dist. 1981)*

## COUNT X
## FRAUD
(Defendants Deliberately Created a False Scenario
which led to Plaintiff Losing His Job)

121. Paragraphs one through 120 are incorporated by reference as if stated in full herein.

122. Defendants deceptively and deliberately secured an unfair and unlawful gain against Plaintiff, which was the loss of his employment, and the opening of a position due to his termination.

123. Illinois law allows those damaged by another's fraudulent actions to sue to recover monetary compensation.

124. Defendants used dishonest methods to take something valuable from Plaintiff, which was his livelihood, his liberty and freedom to work where he please, in addition to damage to his reputation, his standing in the community, his Civil, Human and Constitutional Rights and lost wages.

125. Plaintiff contends, it is fraud perpetrated by Defendants and their subsequent handling of that fraud, which was arbitrary and capricious, that led to where the parties are today.

## COUNT XI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (Group Exhibit C)
*Defendant's actions were meant and intended to cause harm
upon Plaintiff; and they did cause harm*

126. Paragraphs one through 125 are incorporated by reference as if stated in full herein.

127. Plaintiff's Group Exhibit C are statements from those close to Plaintiff, regarding how this situation has affected him.

128. Defendant's defamatory, slanderous, and false statements were intended to paint Plaintiff in a negative, sexual light; and did in fact, paint Plaintiff in a negative, sexual light.

129. Defendant's arbitrary and capricious manner in which they determined Plaintiff's fitness to continueemployment; and their defamatory, false statements made against him were the proximate ause of Plaintiff being placed on a "Do-Not-Hire" list.

130. It is not customary of The Chicago Public Schools to "blacklist" employees that were not retained after their probationary period ended.

131. Plaintiff's probationary period had not ended.

132. The principal at Plaintiff's new location, Ellington Elementary School, stated to him that he is welcome to return there once his name is removed from The City of Chicago, Chicago Public Schools Do-Not-Hire list.

133. Plaintiff has suffered mentally, emotionally and physically due to the actions of Defendants and the effect the damaging, false, defamatory, slanderous email will have on his future. *"Second, the Court's solution failed because the Court defined "actual injury" to include not only impairment of reputation, but also personal humiliation, and mental anguish and suffering. Thus, a plaintiff who cannot prove harm to his reputation still can recover damages if he can prove mental anguish. The expansiveness of this actual injury standard was compounded by the Court's statement that "there need be no evidence which assigns an actual dollar value to the injury."* 418 U.S. at 350

134. Defendant's actions are the approximate cause of Plaintiff experiencing many sleepless nights, headaches, upset stomach, loss of appetite, emotional and mental distress, and continued worrying over the slanderous, defamatory, false statements made against him, and the effect it had on his new position. The Principal at Ellington stated that she hated to see Plaintiff leave.

135. It wasn't Principal Myron Hester's duty, responsibility or job to judge or adjudicate a personal matter that was not filed. *"Generally, all persons who cause or participate in the publication of libelous or slanderous matters are potentially liable for such publication."* Van Horne, 185 Ill. 2d 299 (1999).

136. If a defamatory statement is actionable per se, damages are presumed and the plaintiff need not plead or prove actual damage to his or her reputation to recover. Bryson v. News American Publication, 174 Ill. 2d 77 (1996).

137. Illinois follows the Restatement (Second) of Torts and allows recovery for economic loss, damages for mental suffering and resulting bodily harm, personal humiliation, and impairment of personal and professional reputation and standing in the community. Bryson v. News American publications, Inc.

138. Plaintiff is entitled to amount he is requesting - the maximum amount this Court allows. Punitive damages are recoverable if defamatory statements made with actual malice. Gibson v. Phillip Morris, Inc., Ill. App. 3D 267, 279 (1997).

## V. DEFENDANTS DOES NOT HAVE IMMUNITY FROM THIS ACTION
### Their Actions were Deliberate, Intentional, Willful and Wanton

139. In **Morse v. Frederick**, the U. S. Court of Appeals reversed a lower court's ruling that a Principal was immune from lawsuits. *"The District Court found no constitutional violation and ruled in favor of Morse. The court held that even if there were a violation, the principal had qualified immunity from lawsuit. The U.S. Court of Appeals for the*

*Ninth Circuit reversed. The Ninth Circuit cited Tinker v Des Moines Independent Community School District. Because Frederick was punished for his message rather than for any disturbance, the Circuit Court ruled, the punishment was unconstitutional. Furthermore, the principal had no qualified immunity, because any reasonable principal would have known that Morse's actions were unlawful."*

140. Defendants are not immune to this action, specifically because Defendant, Myron L. Hester's action were willful and wanton.

141. Defendant Myron L. Hester's actions were deliberate and intended to cause harm to Plaintiff. His email was written with an utter disregard and indifference to the welfare of Plaintiff.

142. Principal Myron L. Hester is not immune from the claims made by Plaintiff particularly because the incident that led up to Plaintiff's firing had nothing to do with CPS business, and their handling of the matter was arbitrary and capricious. *"As an example, individual members of the Board of Education, as government officials responsible for direction of a school superintendent, were privileged from liability for alleged defamation of a former superintendent if their statements were made within the scope of their official duties."* **Roberts v. Board of Education**, 25 F. Supp. 2d 866 (N.D. Ill. 1998).

143. Falsely stating to other individuals that a sexual harassment complaint was filed against Plaintiff regarding an individual that did not work where Plaintiff worked, lacked the elements of sexual harassment, indicating malice.

144. Defendant Principal Myron L. Hester would only be immune from Plaintiff's claims if his assertion that a sexual harassment complaint were related to the duties held by Principal Hester and Plaintiff; and if it had actually occurred, and that is to be determined by a court of law.

145. Defendant Myron L. Hester's email of November 21, 2013 was not written in good faith. **745 ILCS 10/2-203**.

146. Plaintiff submitted to this Court an unsigned "incident report." Defendant Myron L. Hester had no business acting upon it. Plaintiff also submitted to this Court, an email that falsely stated a sexual harassment complaint was filed against him. Plaintiff has met his burden in proving defamation, slander, libel and emotional distress. Benhart v. Rockford Park Dist., 218 Ill. App. 3D 554 (1991)

147. Because Defendant Myron L. Hester's actions were willful and wanton, and demonstrated malice towards Plaintiff, and because the incident report had nothing to do with the scope of Defendant Hester's or Plaintiff's official duties, Defendants are not immune from Plaintiff's claims.

## VI. MALICE, WILLFUL AND WANTON CONDUCT

148. A Willful and Wanton Conduct is a willful or wanton injury that must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the

danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care. [Henslee v. Provena Hosps., 369 F. Supp. 2d 970, 977-978 (N.D. Ill. 2005)]

149. Willful and wanton conduct means "acting consciously in disregard of or acting with a reckless indifference to the consequences, when the Defendant is aware of her conduct and is also aware, from her knowledge of existing circumstances and conditions, that her conduct would probably result in injury." [Duncan v. Duncan (In re Duncan), 448 F.3d 725, 729 (4th Cir. Va. 2006)] "A course of action which shows actual or deliberate intention to harm or which, if not intentional, shows an utter indifference to or conscious disregard of a person's own safety and the safety of others."[Siemer v. Nangle (In re Nangle), 274 F.3d 481, 483 (8th Cir. Mo. 2001)]

> *Pursuant to the Act, "upon request, an employee has the right to submit a written explanation of any statement in his or her file if the employer will not agree to remove or change that statement, as well as obtain a copy of all or part of the information contained in his or her file. Furthermore, an employer is prohibited from divulging a disciplinary report, letter ofreprimand, or other disciplinary action to a third party unassociated with either the employer or the employee's bargaining agent without giving written notice to the employee, by first class mail."*

## VII. DAMAGES

150. If the email of November 21, 2013 did not exist, Plaintiff would have been earning approximately $31,000.00    (Thirty-One Thousand Dollars) per year.

151. Plaintiff is currently 25 years of age, and has at least 35 more good years to work prior to retiring.

152. Plaintiff assess his damages as the amount he was to make, prior to the arbitrary and capricious actions of Defendants, times the  number of years he intended to work for Defendants.

153. Plaintiff contends that $31,000.00 (annual income) x 35 (no of years left to work), is equivalent to $1,085,000.00 (One Million, Eighty-Five Thousand Dollars).

## VIII. IN CONCLUSION

Sadly, we live in a society where a person can be  targeted by another person for no reason. It's worse when that person holds a position of authority over one. The legal definition is "under color of law." This action puts a person's future and fate in that person of authority hands.  This is what happened in the instant case. Instead of looking at Plaintiff's file to see if Principal Myron L. Hester's email of November 21, 2013 matched his actual file and records, and giving Plaintiff a chance to speak, regarding a sexual harassment complaint, they arbitrarily and capriciously judged and terminated him.

WHEREFORE, Plaintiff respectfully requests judgment in his favor and against Defendants,

The City of Chicago, The Chicago Public Schools, The Board of Education of Chicago, IL, and Myron

L. Hester, Principal, individually and in his official capacity.

A.  Compensatory damages for Plaintiff's emotional distress and damages, loss of standing in the community, damage to his reputation, and loss of wages in the amount of $1,085,000.00;

B.  Punitive damages;

C.  Injunctive relief requiring that Defendants remove from Plaintiff's file, and destroy the damaging and defamatory email of November 21, 2013;

D.  Injunctive relief, requiring that Defendants remove Plaintiff's name from their Do-Not-Hire list;

E.  Reasonable attorney fees; and

F.  For such other relief this Court deems just.

## JURY DEMAND

Now comes Plaintiff, GREGORY ALEX, pro se, and demands a trial by jury.

Respectfully Submitted:

GREGORY ALEX

**GREGORY ALEX, pro se**
**Plaintiff**
**4747 S. King Drive**
**Chicago, IL 60615**
**(773) 351-0142**

DATED:  5|23|2014



## Re: Gregory Alex

1 message



On Thu, Nov 21, 2013 at 5:29 PM, Hester, Myron <mlhester@cps.edu> wrote:
Mr. Krieger,

Since his arrival in September, Mr. Alex's work performance has not met our expectations. Here are a few concerns:

- He left the building during his lunch break to have sexual relations with a bus aide who later filed a sexual harassment complaint about him and said he spread rumors about it to staff members at the school; when my AP and I had a talk with him in my office about this matter, he initially denied it but when we brought in a staff member who he spoke to about the lunch break encounter he ultimately admitted that he did meet with the bus aide and had sex with her and that he did tell two employees at the school what he did with her
- Poor work performance; he constantly has to be reminded about his duties and where he should be to fulfill those duties
- He eats food in the office while working and assisting parents and visitors
- He has had inappropriate conversations with staff members making sexual innuendos to them; according to teachers when a staff member told him he had food/crumbs still on his face, he responded that it was due to him finishing performing oral sex
- His work performance during recess and lunch is also sub par; he poorly supervises and monitors students during lunch and recess, his primary work duty. My AP and I have repeatedly reminded

"Exhibits A"   1 of 4

him about and modeled for him active monitoring and engagement strategies with students, and he has not complied with our expectations

In sum, Mr. Alex just has not been an asset to Kozminski.

On Thu, Nov 21, 2013 at 4:02 PM, Krieger, Thomas <tkrieger@cps.edu> wrote:
Mr. Hester -

I received your request to terminate this probationary employee. Could you please respond to this email with a list of the reasons for which you want to terminate Mr. Alex?

Thank you.

**Tom Krieger**
**Office of Employee Engagement**
**773-553-1193 (phone)**
**773-553-1201 (fax)**


--
**Myron L. Hester, Ed.S**
Principal
**Kozminski Elementary Community Academy**
**936 East 54th Street**
**Chicago, IL 60615**
**773-535-0980 main**
**773-535-0982 fax**
**www.kozacademy.org**



--
**Myron L. Hester, Ed.S**
Principal
**Kozminski Elementary Community Academy**
**936 East 54th Street**
**Chicago, IL 60615**
**773-535-0980 main**
**773-535-0982 fax**
**www.kozacademy.org**

2 of 4

SAFETY 103 (Rev. 6/93)
Com. No. 97

**INCIDENT REPORT**

CHICAGO PUBLIC SCHOOLS
Safety and Security

102

SCHOOL Kozminski

DISTRICT_____ UNIT NO._____

PERSON COMPLETING REPORT Lisa McDonald TITLE Bus-aide

INCIDENT_____ DATE AND TIME VII-08-13

VICTIM (If Applicable) Lisa McDonald _____ SEX_____ AGE 46
(LIST ADDITIONAL VICTIMS IN NARRATIVE)

ADDRESS 936 E. 46 St _____ OCCUPATION Bus-aide

OFFENDER (If Known)_____ SEX_____ AGE____
(LIST ADDITIONAL OFFENDERS IN NARRATIVE)

ADDRESS_____ OCCUPATION_____

NARRATIVE SECTION: (Describe What Happened and What Action Was Taken)

Friday I drop my kids off at school, then talk to another employee + find out mr. Alex had said he had sex with me and was over my house house. I Lisa mcDonald talk to Mr. Brumfield about the issue. I would like for Mr. Alex to apologize for the lies he told his co workers. I would like the principal to talk to him about the issue are serious.

(USE REVERSE SIDE IF NECESSARY)

IF ARREST WAS MADE, INDICATE POLICE DEPT. RD NUMBER_____

_____
(DATE)

"Exhibit B"

_____
(SIGNATURE OF ADMINISTRATION)

DISPOSITION OF COPIES

- **Original Copy (White)** to Safety and Security
- **First Copy (Yellow)** Retain in School File
- **Second Copy (Pink)** to District Office



**OFFICE OF EMPLOYEE ENGAGEMENT**
125 South Clark Street, 13ᵗʰ Floor • Chicago, Illinois 60603

December 13, 2013

Gregory Alex
4747 S King Dr
Apartment 907
Chicago, IL 60615

**Probationary Part-Time Aide**
**EMP ID: 000234907**

Dear Mr. Alex:

Please be advised that your employment with the Chicago Public Schools is terminated effective **immediately**. Be further advised that you are ineligible for future employment with the Chicago Public Schools.

Sincerely,

Thomas A. Krieger
Assistant Director of Employee Engagement

TAK:gg

cc:    James Ciesil
        Lorrie Cosme
        Myron Hester
        Taalib-Din Ziyad

_____

I received the original letter on this _____ day of _____ 2013.


_____
Gregory Alex

3 of 31

*Educate • Inspire • Transform*



OFFICE OF EMPLOYEE ENGAGEMENT
125 South Clark Street, 13ʰ Floor • Chicago, Illinois 60603

January 21, 2014

Gregory Alex
4747 S. King Drive, Apt. 907
Chicago, IL 60615

Dear Mr. Alex:

I am writing in response to your recent correspondence, wherein you asked for a copy of your "personnel records," and also inquired about the reasons behind your recent termination.

With respect to your personnel records, enclosed with this letter is a complete copy of the file that this office maintains. As you can see, the file contains only the December 13, 2013 termination letter, as well as a two page email from the principal of Kozminski Elementary School. If you would like to review your full personnel file, please contact Carline Altine in our Employee Records Department to make an arrangement to do so. Ms. Altine can be reached at 773-553-1112.

The reasons for your termination are described in Principal Hester's email. We have reviewed the record and determined that your termination was procedurally correct and factually warranted.

If you have any questions, please call me at (773) 553-2321. Thank you.

Sincerely,

David Ruhland
Director of Employee Engagement

Enclosures

cc:    Carline Altine

4 of 4

## ILLINOIS MUNICIPAL DEPARTMENT, FIRST DISTRICT

GREGORY ALEX,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　) 　Case No.:　　**2014 011132**
　　　　　　　　　　　　　　　　　　)
MYRON L. HESTER, PRINCIPAL of　　)
KOZMINSKI ELEMENTARY　　　　　　)
COMMUNITY ACADEMY, Individually,　)
and as a Representative of the Chicago　　)
Public Schools, and THE CHICAGO　　)
PUBLIC SCHOOLS (CPS),　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　　　)

## SWORN AFFIDAVIT OF GREGORY ALEX

I, Gregory Alex, do hereby state that the following statement is true and accurate to the best of my knowledge and belief:

I am a young man that was raised well. My mother was always there for me and I am loved by a host of family and friends. Ever since I was a child, I aspired to work in a school, as I loved school so much that's where I wanted to work; to build my career. In 2013, my hard work paid off. It was like I was in a dream, working in the Chicago Public School system. I understood I was just starting off, but based on my educational training I knew I would rapidly move up within the system. And I was correct. Back to back, I passed interviews and was deemed eligible for positions I applied for.

In December, 2013, without cause or provocation, my career... my dream came to a dramatic halt. At first, I couldn't understand why since I was getting many compliments at my new position. I took the liberty of requesting a copy of my employee file to see if it would shed some light on what happened. My jaw dropped when I saw just the one entry in my file. There wasn't a stack of papers, there wasn't any disciplinary reports or write-ups. There was one document, an email.

This email that was apparently sent to other people, and discussed with others, stated that a sexual harassment complaint had been filed against me. That was news to me, as normally when someone files a complaint against someone, they are notified via the jurisdiction that handles sexual harassment claims. That never happened because one was never filed. The email was false.

My life changed forever when I read it. Everything I'd ever hoped for and dreamed of, and trained for were gone - just like that, in an instant. I realized that, had that email not been written, I would still be working in my new location. The principal was really saddened by it and stated to me that she had no choice but to let me go. The good news is that she said I could return once the misunderstanding had been rectified.

As an "at will" employee, I was just that. An "employee" that was at will. I wasn't a victim at will. My working at the Chicago Public Schools didn't waive my right to not be violated and to receive justice. I didn't give my permission to be defamed and slandered. I should have left that position in the same mental, emotional and physical state I was in when I was first hired and prior to the email of November 21, 2013. It's almost as if the principal, for his own personal reasons, set out on crusade to ruin me, and he did just that. He ruined my career. I'm just 25 years old, so this is such a traumatic event.

There are no laws that state that I can be damaged and violated, and not have any recourse in taking action just because of where I work. In the contrary, there are laws.. plenty of them, that state a

"Exhibits C"

person cannot knowingly provide false statements to someone about another person. That's referred to as defamation of character. What was falsely stated about me was written and spoken so I have proven my claims. I need resolve. I need justice. I need to have this matter heard by a tribunal so I can become whole again, and to deprive me of that right will be the end of a promising career and will have a devastating impact on my life.

I cannot eat, I am having nightmares, problems sleeping, I want to be alone, when previously I was a social butterfly. The damage is intense. I am humiliated, damaged beyond imagination and I don't know what my future holds. It would be different had I actually did something wrong, but a sexual harassment complaint was NOT filed against me.

As the Plaintiff in this case, I have a right to confront my accuser. I have a right to see the sexual harassment complaint that was filed. I won't be seeing it because one does not exist. I have been damaged by Myron L. Hester's actions. It was cynical, intentional, done with malice, and was willful and wanton. It was all planned to cause harm to me and it did in fact, cause me harm.

As a U.S. Citizen, I am entitled to redress and justice. I need to be back the way I was prior to that email that defamed my character and caused me severe emotional distress.


Gregory Alex
Plaintiff


**By signing this sworn affidavit, Affiant acknowledges that the foregoing statements are true and accurate to the best of his knowledge and belief; and made under penalty of perjury, pursuant to 735 ILCS 5/1-109 of the Illinois Code of Civil Procedure.**

_____          3-24-14
Signature of Affiant                                        Dated

_____

### NOTARY PUBLIC

Signed and sworn to by _Gregory C Alex_ , this _24_ day of March, 2014.
Type of Identification produced:
_____ State ID
___X___ Driver's License
_____ Other

Notary Public: _Paulette Ann Custard Smith_

My Commission Expires: _June 21, 2016_          Seal:

OFFICIAL SEAL
PAULETTE A CUSTARD SMITH
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 06/21/16

## ILLINOIS MUNICIPAL DEPARTMENT, FIRST DISTRICT

GREGORY ALEX,                                    )
                                 )
     Plaintiff,                                  )
                                 )
v.                                               )   Case No.:   **2014 011132**
                                 )
MYRON L. HESTER, PRINCIPAL of                    )
KOZMINSKI ELEMENTARY                             )
COMMUNITY ACADEMY, Individually,                 )
and as a Representative of the Chicago           )
Public Schools, and THE CHICAGO                  )
PUBLIC SCHOOLS (CPS),                            )
                                 )
     Defendants.                                 )

### SWORN AFFIDAVIT OF STANLENE ALEX
### Witness No. 1

I, **STANLENE ALEX**, do hereby state under oath that the following are true and accurate statements to the best of my knowledge and belief:

1. I am the mother of Gregory Alex and I am scheduled to be a witness at his upcoming trial regarding this matter.

2. As a mother, I was extremely proud when my son graduated from the University of Illinois, where he obtained his Bachelor's Degree. I raised my Gregory to be the best he could be, while at the same time, respecting others.

3. In December 2013, Gregory called me, excited about a new position he interviewed for and was hired to perform.

4. A short time later, Gregory came to the house. He was he in tears. I thought he had gotten jumped on, or someone had physically harmed him. I asked what was wrong because it's very unusual to see him cry.

5. Gregory told me that out of the blue, just like that, his career was over. He said the new principal called him into the office and said she regretted that she had to let him go; that it was out of her hands.

6. In January, 2014, Gregory came to the house again. He showed me an email he received from an office downtown. He could barely speak after handing it to me. Needless to say I was shocked and saddened. He said based on the email, he now knew the reason his career ended so abruptly. Apparently, the principal of his old school told others that a sexual harassment complaint had been filed against my son. This was not a true statement. I raised an honest, decent young man, not the sexual predator or pervert he was made out to be in the email I read. Watching my son cry, I could do nothing but cry with him.

### "GROUP EXHBITS A"

7. Shortly thereafter, I noticed that Gregory began to lose weight. I became very concerned about him and offered to prepare his meals but he had no appetite. He refused to eat.

8. I saw such hurt and pain in my son's face. He kept telling me that he never sexually harassed anyone and that no complaint had ever been filed against him. I believed him. The email I read has the capability of ruining his life and career. As a matter of fact, the damage to his reputation and character has already started.

9. I watched my son become more and more depressed. In one instance when I was able to convince him to eat, about 5 minutes later, he ran into the bathroom and the food came up. He was unable to hold it down.

10. I told Gregory to put his coat on so we could go to the doctor. He said he would go by himself and he left my home. I found out later from his father that he went home and climbed into bed and went to sleep. Gregory said he had no strength or will to do anything but go to sleep. He also said he had no health insurance, meaning he was unable to pay for help.

11. Through tears, he kept saying how his future is over, how it's in jeopardy and how no one will hire him for any decent position with that being written about him. He said the dream that motivated him to excel in College was stripped away without him doing anything wrong.

12. Words cannot express how a mother feels when she sees her son hurting so badly and slipping into such depression, not over something he did wrong at work, but over a sexual harassment comment that he swore never happened.

13. I instructed my son to take the matter to a court of law. I figured if the principal stated he had been accused of sexual harassment, surely there was a complaint he actually saw. I told Gregory that by filing an action in court, the principal would be required to produce the sexual harassment complaint he wrote about.

14. I hope to God this can be fixed. Gregory worked hard in College, is a good, honest man and did not deserve this. I've never witnessed my son so depressed, down and out until now. My heart is broken because of the emotional trauma my son is experiencing.

**By signing this sworn affidavit, Affiant acknowledges that the foregoing statements are true and accurate to the best of her knowledge and belief; and made under penalty of perjury, pursuant to 735 ILCS 5/1-109 of the Illinois Code of Civil Procedure.**

_Marlene Alex_         _3/24/14_

Signature of Affiant             Dated

## NOTARY PUBLIC

Signed and sworn to by _25 March_, this _25_ day of March, 2014.

Type of Identification produced: _____ State ID _X_ Driver's License _____ Other

Notary Public: _Paulette Ann Custard Smith_

My Commission Expires: _June 21, 2016_     Seal: _June 21, 2016_

OFFICIAL SEAL
PAULETTE A CUSTARD SMITH
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/21/16

## ILLINOIS MUNICIPAL DEPARTMENT, FIRST DISTRICT

GREGORY ALEX.                                      )
                                                   )
    Plaintiff.                 )
                                                   )
v.                                                 )    Case No.:    **2014 011132**
                                                   )
MYRON L. HESTER. PRINCIPAL of                      )
KOZMINSKI ELEMENTARY                               )
COMMUNITY ACADEMY. Individually,                   )
and as a Representative of the Chicago             )
Public Schools, and THE CHICAGO                    )
PUBLIC SCHOOLS (CPS),                              )
                                                   )
    Defendants.                )

### SWORN AFFIDAVIT OF JALEEL MUHAMMAD
### Witness No. 2

### I, **Jaleel Muhammad**, under oath, do hereby attest to the following:

1. I am Gregory Alex's older brother and am very concerned about my brother Gregory Alex on many levels. He has always been very responsible, considerate, respectful, and "goal-oriented."

2. My little brother has slipped into a depressive state due to the unfortunate circumstances involving an accusation made against him that he states never happened and was not true.

3. I can empathize with him because this is the first time that his core character and morals have not only been called into question, but has been unjustly penalized. Of course I've known him all of my life, and I bear witness to his depressed state of mind due to being accused of a sexual situation in an environment that involves children.

4. My brother has not slept well since being being made aware of the email he showed me and the resulting consequences which put an immediate halt to his lifelong dreams. He told me that all of the studying and hard work he did in College was all for nothing.

5. Gregory's inability to work within the Chicago Public Schools has stripped him of his dreams and goals. Everything he's worked so hard to achieve, was gone just like that based on two words, according to Greg: sexual harassment

6. I bear witness to my brother's remarkable reputation, that has been sullied.

7. Gregory graduated from the University of Illinois in Champaign with a Bachelors degree and resolute motivation to educate and work with children within the Chicago Public Schools.

8. Quite frankly, Gregory was reared in a stable and respectable household which always emphasized respect for others; women in particular. We've never had any issues whatsoever with my little brother (17yrs my junior). He's truly one of the most respected males I've ever embraced!

9.  At the beginning of the year, in January, I invited Gregory to my house when I heard he would not eat and was slipping further into depression. His refusal to eat caused him to lose about 10 pounds since being made aware of that damaging email. It has and will continue to have a direct and negative impact on his career, future and dreams.

10. I'm hopeful that a fair and sensible outcome will come out of this so that Gregory can resume living out his lifelong passion and come out of the depressed state he has sunk into.

11. Hopefully, my little brother will be able to support himself financially again at a level that matches the Bachelor Degree he holds, and that he can put this unfortunate incident behind him and move forward with his life.

12. There are several high school principals that covet Gregory's employment, and has informed my brother that he is welcome to return once this incident has been rectified.

13. The family of Gregory Alex awaits the day that this tarnish is removed from his record and reputation and he is able to live happy and motivated again, rather than dark, depressed and emotionally ill.

Best regards.  Jaleel Muhammad, Brother of Gregory Alex
195 N. Harbor Dr. #5408, Chicago, IL. 60601 - 312 519-0750

**By signing this sworn affidavit, Affiant acknowledges that the foregoing statements are true and accurate to the best of his knowledge and belief; and made under penalty of perjury, pursuant to 735 ILCS 5/1-109 of the Illinois Code of Civil Procedure.**

Abdul Jaleel Muhammad          3 - 25 - 2014

Signature of Affiant    COPY          Dated

Will Be Presented on March 27th 2014

**NOTARY PUBLIC**

Signed and sworn to by Sandy Flores this 26th day of March, 2014.

Type of Identification produced:

____ State ID

_V__ Driver's License

____ Other

Notary Public: Sandy Flores

My Commission Expires: June 06, 2016

NOTARY PUBLIC
OFFICIAL SEAL
STATE OF ILLINOIS
SANDY FLORES
MY COMMISSION EXPIRES
JUNE 6, 2016

Seal: _____

## ILLINOIS MUNICIPAL DEPARTMENT, FIRST DISTRICT

GREGORY ALEX,                                )
                                             )
    Plaintiff,                           )
                                             )
v.                                           )    Case No.:   **2014 011132**
                                             )
MYRON L. HESTER, PRINCIPAL of                )
KOZMINSKI ELEMENTARY                         )
COMMUNITY ACADEMY, Individually,             )
and as a Representative of the Chicago       )
Public Schools, and THE CHICAGO              )
PUBLIC SCHOOLS (CPS),                        )
                                             )
    Defendants.                          )

### SWORN AFFIDAVIT OF BARBARA RICHARD
### Witness No. 3

**I, BARBARA RICHARD, under oath, provide to all those involved, my sworn testimony as to my knowledge of events regarding Gregory Alex and his character and emotional damage.**

**a**. I am a long-time friend of the family and have known Gregory since he was two years old.

**b**. I've witnessed Gregory grow and develop into a fine young man, and can sincerely state that I am honored to know him and his family.

**c**. After graduating from high school, Gregory was excited about attending College and pursuing his career in working within the Chicago Public School system. He has always been very enthusiastic and eager to work with children.

**d**. I am a retired CPS educator after 38 years of service, and I am aware of the impact the email can and will have on his career, and person in general. No one wants to be falsely accused of sexual harassment or anything associated with it.

**e**. As a former CPS employee, I was excited when Gregory told me about the new position he got in December, 2013. I worked in the school system 38 years, so I have first hand knowledge as to how his future and career was secured, once he was hired.

**f.** Gregory told me, while smiling from ear to ear, that he was moving up in his career and how God had blessed him by placing him in the very position he dreamed of.

**g**. In January, Gregory's mom, Stanlene Alex, called me sounding so down and out. I asked her what was wrong and she told me about an email that falsely accused her son of sexually harassing someone.

**h.** I immediately went to Stanlene's home and read the email. I teared up because I knew, that with those words connected to a person within the school system, the damage could be extensive.

**I.** When I read the things written about Gregory by the principal it blew my mind. It contradicted the Gregory we all know and love.

**j.** I have to admit, I felt as bad as Gregory did because I know him as being a positive, respectable, and professional young man; not a person that could do what was written about him.

**k.** I tried my best to reassure him that he would get through this, but I heard in his voice and saw in his face, a sense of hopelessness. He kept asking why would the principal lie on him like that.

**l.** Hearing about his eating problem, being unable to hold food down, and his refusal to do the things he was doing prior to being accused of sexual harassment, I took the liberty of inviting him out to lunch. He refused and said he just wanted to be by himself.

**m.** I saw the tears, the fear in his eyes, his weight loss, and the depression he was going through. He expressed concern that the email has already damaged him. According to the new principal, Gregory was doing a good job and all of a sudden, found himself having to defend against a sexual harassment accusation made not by a woman, but by a male principal.

**n.** Based upon my 38 years with CPS, I know the email will damage his future endeavors; it's already has and will continue to do so.

**o.** The Gregory I know could have never done what he has been accused of.

**p.** As a long-time friend of the family, I've never seen him exhibit any negative behaviors around me nor my family; or women in general. Gregory was taught to respect women and his elders, and that's how he lived his life. Hence, based upon my knowledge of Gregory and his character and personality, I'd would say that the email written about him is not the truth. Again, I've known him since he was 2.

**By signing this sworn affidavit, Affiant acknowledges that the foregoing statements are true and accurate to the best of her knowledge and belief; and made under penalty of perjury, pursuant to 735 ILCS 5/1-109 of the Illinois Code of Civil Procedure.**

*~ Barbara Richard, Former CPS Educator ~*

Barbara Richard                                    3-24-14

Signature of Affiant                               Dated

---

**NOTARY PUBLIC**

Signed and sworn to by _Barbara Richard_ , this _24th_ day of March, 2014.

Type of Identification produced:

✓ State ID

____ Driver's License

____ Other

Notary Public: _____

My Commission Expires: _11-14-2017_

"OFFICIAL SEAL"
BRENDA GAGE BRITT
Notary Public, State of Illinois
My Commission Expires 11/14/2017

Seal:

03-24-2014

## ILLINOIS MUNICIPAL DEPARTMENT, FIRST DISTRICT

GREGORY ALEX,                                )
                              )
    Plaintiff,                              )
                              )
v.                                           )     Case No.:   **2014 011132**
                              )
MYRON L. HESTER, PRINCIPAL of               )
KOZMINSKI ELEMENTARY                         )
COMMUNITY ACADEMY, Individually,            )
and as a Representative of the Chicago       )
Public Schools, and THE CHICAGO             )
PUBLIC SCHOOLS (CPS),                        )
                              )
    Defendants.                             )

### SWORN AFFIDAVIT OF MILAN HILL
### Witness No. 4

The undersigned, **MILAN HILL**, do hereby give her sworn testimony as to relevant events concerning one Gregory Alex.

1. I am a close friend of Gregory Alex and has known him for about 12 years.

2. I met Gregory years ago by a mutual friend. He is a very college-oriented young man that has high hopes and career aspirations.

3. Over the past 12 years, I've watched Gregory grow into such a fine young man and I am truly honored to be in his circle of prestigious friends.

4. In January, I received a call from a young man that was all choked up. I knew it was Gregory, not by the voice on the phone, but by the number that appeared on the telephone.

5. Gregory was extremely upset. He asked if I could come and talk to him because he was very depressed and didn't want to keep worrying his family.

6. I went to Gregory's home and talked to him. He told me his life is ruined. I asked what was going on, and he reached into the table and handed me a sheet of paper. It appeared to be an email accusing my dear friend of being involved in a sexual harassment complaint.

7. I was shocked and in disbelief! Greg is one of the finest men I've ever known. The email did not match the Gregory Alex I had come to know and love as a second brother.

8. I can and will testify as to Gregory's character. He has many friends that love and care about him that would also be willing to testify.

9. Gregory still is depressed. He is losing more and more weight and I can't really blame him. I'd be crushed if I were accused of being involved in a sexual harassment complaint.

10.   The Gregory I know would never do anything that would jeopardized his ability to further the growth of the next generation of youth.

11.   I am confident that if you talk with his colleagues and former teachers, you will realize that a grave mistake has been made and Gregory and his character has been grossly misrepresented.

12.   I remain confident that Gregory's record will be cleared and he can move pass this traumatic event that is occurring in his life.

13.   This could not have happened to a better person. There are so many people that adore this man. The picture that has been painted about him based on my knowing his character, is not true.

14.   There has clearly been some form of misjudgment and communication regarding Gregory Alex. We all have to go through trials and tribulations and people with tell untruths about your character.

15.   As Gregory's dear friend, I hope this young man is reinstated and made whole.

*Milan Hill*
*Candidate*
*The Chicago Police Department*


**By signing this sworn affidavit, Affiant acknowledges that the foregoing statements are true and accurate to the best of his knowledge and belief; and made under penalty of perjury, pursuant to 735 ILCS 5/1-109 of the Illinois Code of Civil Procedure.**

_____          3/2**5**/14
Signature of Affiant                                     Dated

---

## NOTARY PUBLIC

Signed and sworn to by _MILAN   HILL_, this 24th day of March, 2014.

Type of Identification produced:
_____ State ID
  X   Driver's License
_____ Other

Notary Public: _____

My Commission Expires: 5·23·17

```
"OFFICIAL SEAL"
Karessa Britt
Notary Public, State of Illinois
My Commission Expires 5/23/2017
```

Seal: _____

## ILLINOIS MUNICIPAL DEPARTMENT, FIRST DISTRICT

GREGORY ALEX,                                  )
                                               )
    Plaintiff,                             )
                                               )
v.                                             )    Case No.:    **2014 011132**
                                               )
MYRON L. HESTER, PRINCIPAL of                  )
KOZMINSKI ELEMENTARY                           )
COMMUNITY ACADEMY, Individually,               )
and as a Representative of the Chicago         )
Public Schools, and THE CHICAGO                )
PUBLIC SCHOOLS (CPS),                          )
                                               )
    Defendants.                            )

### SWORN AFFIDAVIT OF MARIA BLACKWELL
### Witness No. 5

I, Maria Blackwell, do hereby swear and state under oath, as to her testimony about the case regarding Gregory Alex and the Board of Education / The Chicago Public Schools provide the following testimony:

1. I have known my best friend, Gregory Alex, for 4 years.

2. Those in our circle of friends know that if any of us needed any assistance, help, advice or whatever the case may be, we could always depend on Greg. He's fair, he's considerate and he is an overall kind person. His mother raised him well.

3. Greg is going through some serious emotional issues right now. He used to call me to go out to dinner, lunch, or to just hang out. He has stopped calling and we do not go out anymore. That's not like him.

4. When I found out Greg was accused of a sexual harassment incident, I first thought to myself, *"No. Not the Greg I know."*

5. I was shocked when I saw him and the weight he's lost. His overall appearance was gray, depressing and sad.

6. He kept asking me what will he do now, how will he be able to live with someone accusing him of sexual harassment, when it's a lie.

7. I was at a loss for words. What could I say to a person that talked non-stop about being a positive role model for children now that he was in the position to do so, based upon his new career with the Chicago public schools.

8. I could not console him. I told him I'd keep checking on him to see if he were alright, however, after I left and tried to call, he refused to answer the phone. Greg indicated he had no health insurance and was unable to get any proper help for his emotional state. He had no money to pay.

9. Everybody is worried about Gregory. He won't eat, he won't live his life the way he was prior to be accused of being involved in a sexual crime, and he has stopped socializing. Gregory has retreated into his own dark world, hoping he get some type of resolve out of the matter.

10. As quick as his dream came to fruition, it was taken away. I said to Greg, but you were doing so well. You told me the people at your new school love you. And he said, "*Yes they do. The principal told me she hated to let me go and that I could come back once this is fixed.*" Thank God for that; meaning there is hope and a light at the end of the tunnel.

11. As of the date of my signing this document, Gregory is still unable to live his life the way he was prior to being accused. He said what's left, if he has no career and his dream is gone?

12. The last time we spoke, Gregory was talking one minute, and the very next minute, he was crying on the phone. It's hard and heart wrenching to hear a grown man cry.

13. Gregory went from being a happy-go-lucky man, that loved life itself and loved social events to being a recluse. Today, he barely leave the house unless he absolutely has to. He stopped calling not just me like he used to, but other friends as well. I know my friend, and I honestly believe that all Gregory need is justice and the right to be heard. He wants to tell a court what happened to him and what the principal wrote and spread to others, leading to a career-ending situation.

14. Being labeled as a person with sexual hangups and a person that sexually harassed a woman has apparently caused Gregory serious emotional damage. I am prepared to tell a jury about the character of this young man that only wanted to help children and work within the Chicago Public Schools. It's a shame that one person was able to dash his dream just like that. I am hoping and praying that once this is over, Gregory will be back to the way he was prior to being accused of sexual harassment against a woman, even though the accusation was made by a man.

*Thank you. Maria Blackwell, Orthodontist Assistant*

**By signing this sworn affidavit, Affiant acknowledges that the foregoing statements are true and accurate to the best of her knowledge and belief; and made under penalty of perjury, pursuant to 735 ILCS 5/1-109 of the Illinois Code of Civil Procedure.**

_Maria Blackwell_         3·24·15
Signature of Affiant             Dated

---

**NOTARY PUBLIC**

Signed and sworn to by _Maria Blackwell_, this _24th_ day of March, 2014.
Type of Identification produced:
_✓_ State ID _4245 5285801 B_
_____ Driver's License
_____ Other

Notary Public: _Katrice Dotson_

My Commission Expires: _2/19/2017_      Seal:

OFFICIAL SEAL
KATRICE L DOTSON
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:02/19/17

## ILLINOIS MUNICIPAL DEPARTMENT, FIRST DISTRICT

GREGORY ALEX,                                      )
                                                   )
      Plaintiff,                             )
                                                   )
v.                                                 )    Case No.:   **2014 011132**
                                                   )
MYRON L. HESTER, PRINCIPAL of                      )
KOZMINSKI ELEMENTARY                               )
COMMUNITY ACADEMY, Individually,                   )
and as a Representative of the Chicago             )
Public Schools, and THE CHICAGO                    )
PUBLIC SCHOOLS (CPS),                              )
                                                   )
      Defendants.                            )

### SWORN AFFIDAVIT OF EMMETT SMITH
### Witness No. 6

The undersigned, EMMETT SMITH, a cousin of Gregory Alex, do testify under oath that the following statements are true and correct:

1. My name is Emmett Smith and I am Gregory Alex's cousin.

2. We are very close and on occasion, attend social events together. Both of us were raised in strict households, and were taught to respect others.

3. From the beginning of this year until the present time, my cousin has changed.

4. I learned from Gregory's mother, not from him, what was going on.

5. By the time I heard of the situation, he had retreated and was no longer talking to anyone.

6. I went by his apartment to invite him out, and for the first time, Gregory declined going to a social event.

7. I told Gregory to keep his head up and just pray that justice will be served.

8. I went to his apartment several times and he simply was not himself. He was in a dark room, uninterested in anything anymore.

9. I asked if he were on a diet, due to the enormous amount of weight he has lost. His appearance shocked me.

10. I will provide testimony to a jury to give them an idea as to my cousin's character. There isn't a person I know, that doesn't respect him.

11. I pray that this is over soon. He appears to be sinking further and further in the hole.

13. It is heartbreaking to see my cousin going through so much emotional pain over something he swears he did not do.

14. Gregory being accused of sexual harassment, and losing a new job that secured his future is just too much for him to handle.

15. He's taking this very badly, and the sooner he receives some type of justice, the sooner he can begin go move on with his life.

16. There are many people that can testify on Gregory's behalf. I took the liberty of calling others, and there were so many people willing to sign statements as to his character. He's loved by many.

17. Something has to be done, otherwise, this career-ending accusation has the potential of ruining him for life.

18. The family is praying that the Court hear what he has to say and they be the judge as to what can be done to bring him back to restore him to the position and mindset he was in prior to a principal associating him with sexually harassing someone.

**Emmett Smith**
**Line Assistant**
**Sundstrom Steel**

**By signing this sworn affidavit, Affiant acknowledges that the foregoing statements are true and accurate to the best of his knowledge and belief; and made under penalty of perjury, pursuant to 735 ILCS 5/1-109 of the Illinois Code of Civil Procedure.**

Signature of Affiant                                      Dated 3/24/14

---

**NOTARY PUBLIC**

Signed and sworn to by _Emmett J. Smith_, this _24th_ day of March, 2014.

Type of Identification produced:
_✓_ State ID  5302 1087 243 S
_____ Driver's License
_____ Other

Notary Public: _____

My Commission Expires: _2/19/2017_          Seal:

OFFICIAL SEAL
KATRICE L DOTSON
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:02/19/17

## ILLINOIS MUNICIPAL DEPARTMENT, FIRST DISTRICT

GREGORY ALEX,          )
                             )

      Plaintiff,          )
                             )

v.                        )     Case No.:   **2014 011132**
                             )

MYRON L. HESTER, PRINCIPAL of   )
KOZMINSKI ELEMENTARY        )
COMMUNITY ACADEMY, Individually,  )
and as a Representative of the Chicago  )
Public Schools, and THE CHICAGO   )
PUBLIC SCHOOLS (CPS),         )
                             )

      Defendants.       )

## SWORN AFFIDAVIT OF GREGORY ALEX
### Witness No. 7

I, Gregory Alex, swear under oath as to my sworn testimony, that my statements are correct and true to the best of my knowledge and belief, and that I plan on testifying as a witness at my son's trial as to the following:

1. I am the father of Gregory Alex, and for the past 4 years, we've shared an apartment.

2. I've watched my son grow into the respected, respectable young man he is today. He's ambitious and trustworthy. Many people look up to him and know him as a good, decent guy.

3. As a father, living right there with Greg, I don't understand how is it that he can be celebrating passing another interview, for new position one day, and a short time later, he's depressed, hidden in his room over being accused of being a part of sexual harassment complaint. My son was moving up quickly at Chicago Public Schools. Everybody knew it and were proud of him.

4. Imagine the shame and humiliation of being associated with a sexual harassment issue? It was even worse because it's a school, not an auto factory. It continues to have a devastating effect on him. I see it, I live it with him.

5. Just recently, Greg sought out health insurance so now hopefully he can get the help that's needed.

6. I'd leave food out for him and in the morning it would still be there. His room wasn't cared for anymore, his personal appearance went down the drain, his social life ended, and he became a recluse. It's as if he almost gave up all because of a principal that had no respect and regard for his career and future.

7. Greg showed me a report that some lady wrote, that had no signature on it. No boxes on the form were checked or followed up on from anybody. All that I saw was an invalid document. This means that my son's future is ruined over that invalid piece of paper.

8. Those that know my son are confident he never sexually harassed anybody. The invalid report used against him doesn't say he did either.

9. That email should have never been written and used against my son. He worked hard towards being a successful man and that email destroyed it all. He's going to be forced to take lower paying positions... diminishing his value, education and upbringing.

10. Gregory wasn't some man, choosing to go down the wrong path. He choose to be somebody in life and to have a family, children, being able to support his family. When someone sees those words sexual harassment, right away his chances are diminished. He deserved better. If the school wanted to fire him, okay fine. Fire him. But don't ruin his life and career with an email *left behind* that was not the truth.

>Gregory Alex
>Father of Gregory Alex

**By signing this sworn affidavit, Affiant acknowledges that the foregoing statements are true and accurate to the best of his knowledge and belief; and made under penalty of perjury, pursuant to 735 ILCS 5/1-109 of the Illinois Code of Civil Procedure.**

_____        3-25-2014
Signature of Affiant                    Dated

---

**NOTARY PUBLIC**

Signed and sworn to by Gregory Alex , this 25th day of March, 2014.

Type of Identification produced: A420·2838·8231

_____ State ID

__✓__ Driver's License

_____ Other

Notary Public: _____

My Commission Expires: 3-28-15

"OFFICIAL SEAL"
Yolanda Booker
Notary Public, State of Illinois
My Commission Expires 3/28/2015

Seal: _____