# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

GREGORY ALEX,

        Plaintiff,

        v.

THE CITY OF CHICAGO, et al.,

        Defendants.

Case No. 14 C 3821

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

Plaintiff, Gregory Alex, worked briefly for Chicago Public Schools as a part-time aide in 2013. After he was fired, he sued the Board of Education for the City of Chicago and the principal of the school where he worked, alleging constitutional claims, sexual harassment, defamation and intentional infliction of emotional distress. Defendants moved for summary judgment [58]. For the reasons explained below, the Court grants the motion and enters summary judgment in Defendants' favor.

## I. **Legal Standard**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary

judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party, here, Plaintiff. *See Anderson,* 477 U.S. at 255.

Because Plaintiff is a pro se litigant, the Defendants served him with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by the Court's Local Rule 56.2 [62]. The notice explained the consequences of failing to properly respond to a motion for summary judgment and to a statement of material facts under Federal Rule of Civil Procedure 56(e) and Local Rule 56.1.

## II.   Facts[1]

Plaintiff started working as a part-time aide at Kozminski Elementary Community Academy ("Kozminski"), a Chicago Public School run by the City of Chicago's Board of Education, on September 12, 2013. DSOF, ¶1. Defendant Myron Hester, principal of Kozminski, recommended Plaintiff for the job. *Id.* ¶2. When Plaintiff was hired, he was a probationary employee, and he remained a probationary employee throughout the entire time he worked for the Board of Education. DSOF, ¶¶1, 5. Pursuant to Board of Education policy, "probationary employees are 'at-will' employees who may be discharged from Board employment for any or no cause and with or without notice." *Id.* ¶5 and Exhibit C (Declaration

---

[1]   The facts are taken from the parties' Local Rule 56.1 statements and the exhibits thereto. "DSOF" refers to Defendants' statement of undisputed facts [60]. "DSOAF" refers to Defendants' statement of additional facts [73]. Plaintiff, who is pro se, incorporated his responses to Defendants' statement of undisputed facts in his response brief [68].

of Thomas Krieger, Assistant Director, Office of Employee Engagement; Employee Discipline and Due Process Policy for School-Based Union Employees (Except CTU), ¶VI(B)). The Board defines "probationary employees" as all "employees, excluding teachers, with less than one calendar year of service with the Board." Employee Discipline and Due Process Policy for School-Based Union Employees (Except CTU), ¶III(7). Plaintiff admits that he was, at all times, a probationary employee subject to the Board's at-will policy. Plaintiff's Response to DSOF, ¶5.

As an aide, Plaintiff's duties included monitoring students during lunch and recess and during teacher breaks. DSOF, ¶10. At times, Plaintiff was also responsible for taking students from their classroom to the lunchroom. *Id.* ¶10. Plaintiff was also asked to help with "putting in" attendance and filing student paperwork, and he also helped with an afterschool mentoring program. Plaintiff's Response to DSOF, ¶10.

In November 2013, Plaintiff met with Principal Hester and Assistant Principal Michelle Brumfield to discuss his performance; Hester called the meeting shortly after a bus aide complained about Plaintiff's behavior. DSOF, Exhibit B (Declaration of Myron Hester, ¶4). During that meeting, Assistant Principal Brumfield told Plaintiff that she expected him to be more engaged with the students while he monitored them at lunch time, so that he could help prevent little problems from becoming big problems. DSOF, ¶8. Hester reported that he had personally observed Plaintiff's poor work performance and knew that he sometimes failed to show up at his assigned monitoring location. DSOF, ¶19 and Exhibit B

(Hester Dec., ¶8). In response, Plaintiff told Brumfield and Principal Hester that he would do better with the kids. DSOF, ¶9.

At that meeting, the parties also discussed rumors about some inappropriate comments Plaintiff was alleged to have made to co-workers; Plaintiff initially denied that he made any inappropriate remarks. DSOF, ¶¶6-7. AP Brumfield advised Hester that two staff members reported that Plaintiff made a comment about just having oral sex after they told him he had crumbs on his face. DSOF Exhibit B (Hester Dec., ¶9). Plaintiff admitted that Hester had no reason to doubt Brumfield. Plaintiff's Response to DSOF, ¶¶13, 18. Plaintiff admitted that he told people he had sex with a certain bus aide as well. Plaintiff's Response to DSOF, ¶7.

Attached to Plaintiff's Complaint is an incident report completed by the bus aide who was the subject of Plaintiff's alleged boasts. In the incident report, she complained that Plaintiff "had said he had sex with me and was over my house." November 8, 2013 Incident Report (attached as Exhibit B to Plaintiff's Complaint). The bus aide stated in the report that she talked to AP Brumfield about the issue and that she "would like for Mr. Alex to apologize for the lies he told his coworkers"; she also asked for "the principal to talk to him about the issue" because it is "serious." *Id.*

After the meeting, Hester decided that he no longer wanted Plaintiff at his school and advised the Board that he planned to fire Plaintiff. DSOF, ¶12. In response, Thomas Krieger, whose job responsibilities included the task of approving requests from principals to terminate probationary employees, asked Hester to

explain his reasons for wanting to fire Plaintiff. DSOF, ¶12. Hester explained, in a November 21, 2013 email, that he was firing Plaintiff because he "just has not been an asset to Kozminski." Complaint [11], Exhibit A (November 21, 2103 email from Myron Hester to Thomas Krieger). Hester noted that Plaintiff initiated inappropriate conversations with colleagues and failed to closely monitor students at lunch and recess; Plaintiff also failed to arrive at the appointed time to monitor the students. DSOF, ¶13. Hester's email cited the following justifications for Plaintiff's termination:

- He left the building during his lunch break to have sexual relations with a bus aide who later filed a sexual harassment complaint about him and said he spread rumors about it to staff members at the school; when my AP and I had a talk with him in my office about this matter, he initially denied it but when we brought in a staff member who he spoke to about the lunch break encounter he ultimately admitted that he did meet with the bus aide and had sex with her and that he did tell two employees at the school what he did with her

- Poor work performance; he constantly has to be reminded about his duties and where he should be to fulfill those duties

- He eats food in the office while working and assisting parents and visitors

- He has had inappropriate conversations with staff members making sexual innuendos to them; according to teachers when a staff member told him he had food/crumbs still on his face, he responded that it was due to him finishing performing oral sex

- His work performance during recess and lunch is also sub par; he poorly supervises and monitors students during lunch and recess, his primary work duty. My AP and I have repeatedly reminded him about and modeled for him active monitoring and engagement strategies with students, and he has not complied with our expectations

November 21, 2103 email from Myron Hester to Thomas Krieger (attached to Plaintiff's Complaint as Exhibit A).

On December 16, 2013, Plaintiff, without the knowledge or consent of Hester or Brumfield, transferred to Edward K. Ellington Elementary School. DSOF, ¶30. The Board terminated Plaintiff on December 19, 2013. DSOF, ¶14. At that time, they noted in his personnel file that he was "ineligible for rehire." As a result, Plaintiff lost his position at Ellington.

Plaintiff sued the Board of Education for the City of Chicago and Hester, in both his official and individual capacities, alleging violation of Plaintiff's Fifth and Fourteenth Amendment rights (Counts I and II), arbitrary and capricious board action (Count III), violation of Title IX (Count IV), violation of Title VII (Count V), sexual harassment (Count VI), defamation (Count VII), slander (Count VIII), libel (Count IX), fraud (Count X), and intentional infliction of emotional distress (Count XI). Complaint [11]. He claimed damages of $1,085,000. *Id.* He also sought to have the "do-not-hire" designation removed from his personnel file. Principal Hester and the Board of Education filed separate answers [29], [30], and the Board asserted ten affirmative defenses, which Plaintiff then moved to strike [36].

On February 12, 2015, the Board and Hester filed a joint motion for summary judgment [58]. Plaintiff filed a response to that motion, opposing the entry of summary judgment on all but one of his claims. The motion is now fully briefed.

## III. <u>Analysis</u>

### A.     <u>Plaintiff's Title IX Claim</u>

Plaintiff's Complaint asserts eleven causes of action, and Defendants have moved for summary judgment on all of them. Plaintiff opposes the entry of summary judgment as to all but one claim: he does not oppose the entry of summary judgment as to Count IV, which is his Title IX claim. As Defendants correctly point out, that claim (which relates solely to Plaintiff's employment) is preempted by Title VII, and summary judgment in Defendants' favor is, therefore, appropriate. *E.g., Ludlow v. Nw. Univ.*, No. 14 C 4614, 2015 WL 5116867, at *4 (N.D. Ill. Aug. 28, 2015); *Jones v. Sabis Educ. Sys., Inc.*, No. 98 C 4252, 1999 WL 1206955, at *10 n. 7 (N.D. Ill. Dec. 13, 1999); *Kowal-Vern v. Loyola Univ. of Chicago*, No. 97 C 6409, 2002 WL 1880131, at *5 (N.D. Ill. Aug. 14, 2002); *Blazquez v. Bd. of Educ. of City of Chicago*, No. 05 CV 4389, 2006 WL 3320538, at *11 (N.D. Ill. Nov. 14, 2005). Accordingly, summary judgment in Defendants' favor is appropriate on this claim. The Court turns next to the disputed claims.

### B.     <u>Plaintiff's Constitutional Claims</u>

In Count I of his Complaint, Plaintiff alleges that Defendants violated his 5th Amendment right to procedural due process "by conducting a proceeding that was not factually related with respect to proof of the claims made against him." Complaint [11], ¶57. Plaintiff also alleges that Defendant create a false allegation that a sexual harassment complaint had been filed against him, and that the creation of that allegation "was so severe, pervasive and objectively offensive that it

deprived Plaintiff of access to an educational career within his chosen field and stripped him of the benefits provided by the school when hired to a better position, based on the arbitrary and capricious manner in which Defendants acted." *Id.* ¶61.

This claim appears to be based on Hester's email, which stated that a sexual harassment complaint had been filed against Plaintiff. But the record is clear that a "sexual harassment complaint" *was* filed against Plaintiff. The bus aide's incident report claims sexual harassment against Plaintiff. Plaintiff was aware of the incident report completed by the us aide, and Plaintiff agreed at his deposition that, if she had complained to the principal about what happened, that would be a "complaint." *See* Alex Deposition, p. 70 (DSOF Exhibit A).

In Count II, Plaintiff alleges that Defendants violated the Fourteenth Amendment's Equal Protection Clause; he also cites 42 U.S.C. § 1981. Complaint [11], ¶¶62-75. This claim appears to allege that Hester's email and the decision to fire Plaintiff deprived Plaintiff of his right to work in his chosen profession. To be sure, the right to work is "of the very essence of the personal freedom and opportunity that it was the purpose of the (Fourteenth) Amendment to secure . . . " *Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307, 317 (1976)(citing *Truax v. Raich*, 239 U.S. 33, 41 (1915)). "Decades ago, the Supreme Court recognized that the 'right to work for a living in the common occupations of the community' is a form of liberty interest originating in the Constitution." *Becker v. Illinois Real Estate Admin. & Disciplinary Bd.*, 884 F.2d 955, 957 (7th Cir. 1989) (quoting *Truax*, 239 U.S. at 41; *Hampton v. Mow Sun Wong*, 426 U.S. 88, 102-03, n. 23 (1976)).

Neither the Fifth Amendment nor the Fourteenth Amendment, however, require the Board to retain Plaintiff after it determined that his performance was subpar and his judgment with respect to workplace behavior was poor. The Constitution precludes a State from passing laws that deprive individuals of their right to work based upon arbitrary and capricious delineations or requirements; it does not preclude the routine type of employment decision at issue here. Courts do not "sit as a super-personnel department with authority to review an employer's business decision as to whether someone should be fired or disciplined because of a work-rule violation." *Ballance v. City of Springfield*, 424 F.3d 614, 621 (7th Cir. 2005) (citing *Stewart v. Henderson,* 207 F.3d 374, 378 (7th Cir. 2000)). "The Equal Protection clause of the Fourteenth Amendment is violated only if the defendants have acted with a discriminatory purpose or intent." *Minority Police Officers Ass'n of South Bend v. City of South Bend*, 801 F.2d 964, 966 (7th Cir. 1986) (citing *Arlington Heights v. Metropolitan Housing Develo*pment Corp., 429 U.S. 252, 264-65 (1977)). There is no evidence of discriminatory purpose or intent in this case.

Section 1981 proscribes discrimination based on race in the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a)-(b). "Although section 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical." *Johnson v. City of Fort Wayne*, 91 F.3d 922, 940 (7th Cir. 1996). A Plaintiff asserting race discrimination may defeat a summary judgment

motion by presenting: (1) direct or circumstantial evidence of discrimination (the "direct method"); or (2) indirect evidence that establishes a prima facie case and satisfies the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801–02 (1973) (the "indirect method"). *See, e.g., Adams v. City of Indianapolis*, 742 F.3d 720, 735 (7th Cir. 2014). Under the indirect method, a plaintiff must "establish a prima facie case of discrimination by showing that: (1) he is a member of a protected class; (2) he was satisfying his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside his protected class were treated more favorably." *Cyrus v. Union Pac. R.R. Co.*, No. 12 C 10248, 2015 WL 5675073, at *4 (N.D. Ill. Sept. 24, 2015)(citing *McGowan v. Deere & Co.,* 581 F.3d 575, 579 (7th Cir. 2009)).

Here, the record contains no evidence of direct discrimination, and Plaintiff has offered no evidence to prove the elements of a prima facie case under the indirect method. On the contrary, the record shows that Plaintiff was not satisfying his employer's legitimate expectations, and Plaintiff admits that he is not aware of any other similarly-situated employee who was treated more favorably. DSOF, ¶24. The record contains no evidence to support a claim of race discrimination and no evidence to suggest that Hester, who is African-American, fired Plaintiff because of his race. As Hester stated in his declaration, he did not make any recommendations regarding Plaintiff's employment, or make any decisions regarding Plaintiff's employment, based upon Plaintiff's race. DSOF, ¶35 and Exhibit B (Hester Declaration, ¶11).

Failing to create any genuine issue of material fact, Plaintiff has offered no evidence of discrimination and no evidence of discriminatory purpose or intent. The record shows that Hester believed Plaintiff's performance was subpar and that Hester personally witnessed Plaintiff's poor performance. The record shows that Hester believed Plaintiff made inappropriate vulgar comments to colleagues and believed Plaintiff had bragged to another employee about having sex with a bus aide; Hester had in his possession an incident report from the bus aide claiming that Plaintiff had told others he had sex with her, demanding that Plaintiff apologize and that Hester take action. These were all valid reasons for firing Plaintiff and nothing in the record implicates constitutional concerns.

Likewise, the Board's discipline and due process policy specifically provided that probationary employees like Plaintiff could be fired for any reason, or for no reason. "Although it is true that under certain circumstances an individual has a constitutional property interest in continued employment, such a property interest arises only when there is an existing rule or a 'mutually explicit understanding' to support an employee's claim of entitlement." *Common v. Williams*, No. 86 C 5169, 1987 WL 26152, at *2 (N.D. Ill. Dec. 1, 1987) (citing *Board of Regents v. Roth*, 408 U.S. 564, 577-78 (1972) and quoting *Perry v. Sindermann*, 408 U.S. 598, 601 (1972)). Under the Board's policy, probationary employees are not entitled to continued employment, but are "at will" employees who may be terminated at any time, with or without cause, and with or without notice; they do not enjoy the same due process rights as permanent employees. Plaintiff concedes that this is so.

For all of these reasons, the Court finds that Plaintiff's due process and equal protection claims fail, and that no factfinder could reasonably infer discrimination or discriminatory purpose or intent from the record evidence. Accordingly, Defendants are entitled to summary judgment on Plaintiff's constitutional claims.

C.    Arbitrary and Capricious Board Action

In Count III, Plaintiff alleges that Defendants arbitrarily and capriciously determined that he was not fit for continued employment. Defendants seek summary judgment, arguing that this is not a cause of action and they are right.

In response to Defendants' summary judgment motion, Plaintiff argues that this claim may proceed because the Board's decision to fire him was arbitrary and capricious in that it failed to take into account his side of the story. There are two problems with Plaintiff's claim. First, Plaintiff admits that at least some of the reasons Hester gave for firing him were true. He contends that no one ever filed a sexual harassment complaint against him, but the record shows that the bus aide did file an incident report asking the Principal to address what she perceived to be sexual harassment, and Plaintiff admitted that if she complained to Hester about sexual harassment, that would be a "complaint." Second, even if the Court accepted Plaintiff's characterization, the reasons for Plaintiff's termination are largely irrelevant. Plaintiff admits that, as a probationary employee, he could be fired for any reason or for no reason. Accordingly, the Court finds that Defendants are entitled to summary judgment on Count III.

D.    Title VII Claims

In Count V, Plaintiff alleges that defendants subjected him to a hostile work environment in violation of Title VII.   In Count VI, Plaintiff alleges sexual harassment in violation of Title VII.   These claims appear to be based upon the fact that Defendants raised the subject of sexual activity and discussed sex-related comments during the November 2013 meeting.

Defendants first argue that they are entitled to judgment as a matter of law on Plaintiff's Title VII claims because Plaintiff failed to exhaust all available administrative remedies.   "A condition precedent to bringing a Title VII hostile work environment is that the employee must have 'afford[ed] the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion.'" *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1035 (7th Cir. 2004)(quoting *Cheek v. Western & Southern Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir. 1994)).   There is no evidence in the record to suggest that Plaintiff ever pursued a charge with the EEOC, and Defendants are entitled to summary judgment on this basis.

Even if the Court were to ignore Plaintiff's failure to file an administrative charge, his claims fail on the merits as well.   To establish a prima facie sexual harassment or hostile work environment claim under Title VII, Plaintiff would first have to demonstrate that he was harassed because of his sex by a co-worker or supervisor.  *Hottenroth v. Vill. of Slinger*, 388 F.3d 1015, 1034-35 (7th Cir. 2004) (citing *Hilt–Dyson v. City of Chicago*, 282 F.3d 456, 462 (7th Cir. 2002)).  There is no

evidence that this was the case. In fact, at his deposition, he testified that he had no reason to think that his gender had anything to do with Hester sending the email to Krieger. Alex Dep., pp. 66-67. And he testified that he was not claiming sexual harassment.

Additionally, for any sexual harassment to be actionable, "the conduct must be severe or pervasive." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 754 (1998) (citing *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998); *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21 (1993)). Similarly, to state a hostile work environment claim, Plaintiff must show that the alleged harassment was "so severe or pervasive as to alter the conditions of employment and create an abusive working environment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998); *Huri v. Office of the Chief Judge of the Circuit Court of Cook County*, 804 F.3d 826, 833-34 (7th Cir. 2015). In *Faragher*, the Supreme Court explained that a hostile workplace is "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." 524 U.S. at 787. In deciding whether a workplace is "hostile" courts consider the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employees' work performance." *Id.* at 787-88.

Here, there is no evidence of severe or pervasive conduct; nor is there evidence establishing that the environment at Kozminski was hostile. At most, the evidence shows that Hester and Brumfield discussed sexual activity and sexually-

charged comments in a single meeting that lasted less than 30 minutes. And the topic came up only because Plaintiff allegedly made the comments to co-workers; what was said in the meeting was merely an echo of what Plaintiff was alleged to have said. In fact, the record shows that, despite his allegations, Plaintiff did not believe he was sexually harassed. At his deposition, Plaintiff testified that he was not complaining that he was sexually harassed. Alex Dep., p. 59. When asked whether anyone created a hostile work environment for him, he testified, "no, not that I know." *Id.*, pp. 66-67. In short, there is no evidence in the record to support a sexual harassment or hostile work environment claim, and the Court grants Defendants' motion for summary judgment as to Counts V and VI.

      E.    <u>Plaintiffs' Defamation Claims</u>

Plaintiff asserts three defamation claims: Count VII alleges defamation of character; Count VIII alleges slander and Count IX alleges libel. All of these claims are based upon the email Principal Hester sent on November 21, 2013 to Thomas Krieger.

"A defamatory statement is a statement that harms a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him." *Huon v. Breaking Media, LLC*, 75 F.Supp. 3d 747, 762 (N.D. Ill. 2014) (quoting *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009)). Illinois recognizes two types of defamation: defamation per quod and defamation per se. The two types of defamation claims differ only with respect to the plaintiff's burden to plead and prove damages (with defamation per quod, a

plaintiff must plead and prove special damages, whereas with defamation per se, damages are presumed). *Huon* (citing *Tuite v. Corbitt*, 866 N.E.2d 114, 121 (Ill. 2006); *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 882 N.E.2d 1011, 1018 (Ill. 2008)).

To prevail on either type of defamation claim, a plaintiff must prove "that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Huon*, 75 F.Supp. 2d at 762 (quoting *Green*, 917 N.E.2d at 459). See also *Roberts v. Columbia Coll. Chicago*, 102 F.Supp. 3d 994, 1006-07 (N.D. Ill. 2015); *Seitz–Partridge v. Loyola Univ. Chi.,* 987 N.E.2d 34, 41 (Ill. App. Ct. 2013)). "In defamation actions, statements that are capable of being proven true or false are actionable, whereas opinions are not." *Seitz*, 987 N.E.2d at 43 (citing *Moriarty v. Greene,* 732 N.E.2d 730, 739 (Ill. App. Ct. 2000). "The test for determining whether an allegedly defamatory statement of opinion is actionable is 'whether the statement contains an objectively verifiable assertion.'" *Seitz*, 987 N.E.2d at 43 (quoting *Wynne v. Loyola Univ. Chi.*, 741 N.E.2d 669, 676 (Ill. App. Ct. 2000).

After the meeting with Plaintiff, Hester advised the Office of Employee Engagement that he wanted to fire Plaintiff. Thomas Krieger responded to Hester's request with an email asking Hester to provide a list of reasons for the termination. *See* Complaint, Exhibit A. Hester replied with an email listing his reasons:

- He left the building during his lunch break to have sexual relations with a bus aide who later filed a sexual harassment

complaint about him and said he spread rumors about it to staff members at the school; when my AP and I had a talk with him in my office about this matter, he initially denied it but when we brought in a staff member who he spoke to about the lunch break encounter he ultimately admitted that he did meet with the bus aide and had sex with her and that he did tell two employees at the school what he did with her

- Poor work performance; he constantly has to be reminded about his duties and where he should be to fulfill those duties
- He eats food in the office while working and assisting parents and visitors
- He has had inappropriate conversations with staff members making sexual innuendos to them; according to teachers when a staff member told him he had food/crumbs still on his face, he responded that it was due to him finishing performing oral sex
- His work performance during recess and lunch is also sub par; he poorly supervises and monitors students during lunch and recess, his primary work duty. My AP and I have repeatedly reminded him about and modeled for him active monitoring and engagement strategies with students, and he has not complied with our expectations

In sum, Mr. Alex just has not been an asset to Kozminski.

November 21, 2103 email from Myron Hester to Thomas Krieger (attached to Plaintiff's Complaint as Exhibit A).

Initially, much of what is conveyed in the email is undisputedly true. Plaintiff admitted that his supervisor discussed his performance deficiencies at the November 2013 meeting, and that he responded by telling his supervisor that he would do better. Alex Dep., pp. 30-31. Indeed, Plaintiff does not argue that the statements about his performance were false, and he testified that he didn't think anything Hester said in his email was a lie. *Id.*, p. 105. When asked to identify what in Hester's email was defamatory, Plaintiff testified that "the oral sex and the sexual harassment complaint about the Ms. McDonald – so that is it. The sexual harassment complaint about the oral crumb situation." Alex Dep., p. 70. But, as

17

noted before, Plaintiff admitted at his deposition that if the bus aide told the principal that she felt sexually harassed, that would constitute the filing of a sexual harassment complaint. *Id.* She did so when she filed the incident report. Accordingly, because truth is an absolute defense to a defamation action, Hester's email cannot be actionable. *E.g., Rivera v. Allstate Ins. Co.*, No. 10 C 1733, 2015 WL 5722256, at *6 (N.D. Ill. Sept. 29, 2015)(citing *Republic Tobacco Co. v. North Atlantic Trading Co., Inc.*, 381 F.3d 717, 727 (7th Cir. 2004); *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227-28 (7th Cir. 1993); *Seitz–Partridge*, 987 N.E.2d at 41; Restatement (Second) of Torts § 581A cmt. a (1977)). Similarly, Hester's opinions as to Plaintiff's competence are not actionable. "Statements that an employee was discharged because he was incompetent have been held to be non-actionable opinions." *Roberts*, 102 F.Supp.3d at 1007 (citing *Marron v. Eby–Brown Co., LLC*, No. 1:11–cv–2584, 2012 WL 182234, at *3-4 (N.D. Ill. Jan. 23, 2012); *Hopewell v. Vitullo,* 701 N.E.2d 99, 103-04 (Ill. App. Ct. 1998)).

Finally, even if Hester's email could be construed to include false statements of fact, Plaintiff's defamation claims still fail. Proving defamation in Illinois requires more than just publication; a plaintiff is required to show that the publication was not privileged. "An otherwise defamatory statement is not actionable if made under a qualified privilege." *Phillips v. Quality Terminal Servs., LLC*, 855 F.Supp. 2d 764, 789 (N.D. Ill. 2012)(quoting *Haywood v. Lucent Technologies, Inc.*, 169 F.Supp.2d 890, 916 (N.D. Ill. 2001)). "Illinois law confers a privilege upon '[s]tatements made within a legitimate business context.'" *Id.*

(quoting *Republic Tobacco*, 381 F.3d at 727).    For the privilege to apply, the statement must be: (1) made in good faith; (2) with an interest or duty to be upheld; (3) limited in scope to that purpose; (4) on a proper occasion; and (5) published in a proper manner only to proper parties. *Id.* (citing *Republic Tobacco*, 381 F.3d at 727; *Zeinfeld v. Hayes Freight Lines, Inc.*, 243 N.E.2d 217, 221 (Ill. 1968)).    "The existence of qualified privilege is a question of law."  *Phillips*, 855 F.Supp.2d at 789.

Here, there is no question that Hester sent the email to Krieger "within a legitimate business context."  Plaintiff does not allege that Hester sent the email to anyone else; nor does he allege that Hester sent the email for any improper purpose or for any purpose other than to explain his decision to fire Plaintiff.  For all of these reasons, Defendants are entitled to summary judgment on Plaintiff's defamation claims (Counts VII, VIII and IX).

F.    Plaintiff's Fraud Claim

In Count X, Plaintiff alleges fraud.  As a subtitle to this claim, Plaintiff alleges that "Defendants deliberately created a false scenario which led to Plaintiff losing his job."  Complaint [11], Count X.  He also alleges that "Defendants used dishonest methods to take something valuable from Plaintiff, which was his livelihood, his liberty and freedom to work where he please[s], in addition to damage to his reputation, his standing in the community, his Civil, Human and Constitutional Rights and lost wages." *Id.* ¶124.

"Under Illinois law, the 'elements of common law fraud are: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false;

(3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement.'" *Ohio National Life Assurance Corp. v. Davis*, 13 F.Supp. 3d 876, 882 (N.D. Ill. 2014)(quoting *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 591 (Ill. 1996)). Federal Rule of Civil Procedure 9(b) requires that, when alleging fraud, a plaintiff "must state with particularity the circumstances constituting the fraud . . . ." A complaint "alleging fraud must provide 'the who, what, when, where, and how.'" *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007)(quoting *U.S. ex rel. Gross v. AIDS Research Alliance–Chicago*, 415 F.3d 601, 605 (7th Cir. 2005); *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).

Ostensibly based upon Hester's email, Plaintiff's claim fails here because, as explained above, the statements Hester made were largely true. Certainly, there is no evidence in the record to suggest that Hester knew any part of his email was false. Plaintiff does not dispute that his performance was subpar; he admits that he needed to do a better job of monitoring the students; he admits that if the bus aide complained to the principal about sexual harassment, that would constitute the filing of a complaint; he admits that she, in fact, filed an incident report and spoke to Brumfield about Plaintiff's conduct; he admits that AP Brumfield had no reason to doubt the staff who passed along Plaintiff's oral sex comment; and he admits the Principal Hester had no reason to doubt his AP when she reported what the staff

had told her.  The record simply does not support Plaintiff's claim that Defendants used "dishonest methods" or otherwise committed fraud.

G.      <u>Plaintiff's Intentional Infliction of Emotion Distress Claim</u>

In Count XI, Plaintiff alleges intentional infliction of emotional distress.  This claim is based on Hester's email and his being placed on the "do not hire" list.  Complaint [11], ¶¶128-129.  To win on his intentional infliction of emotional distress claim, Plaintiff would have to prove that: (1) Defendants' conduct was extreme and outrageous; (2) Defendants either intended to inflict severe emotional distress or knew that there was a high probability that their conduct would do so; and (3) Defendants' conduct actually caused Plaintiff to suffer severe emotional distress.  *E.g., Welsh v. Commonwealth Edison Co.*, 713 N.E.2d 679, 683 (Ill. App. Ct. 1999); *McGrath v. Fahey*, 533 N.E.2d 806 (Ill. 1988).  None of these elements is satisfied here.

First, nothing in the record suggests that anything Defendants did was extreme and outrageous.  In the employment context, courts generally decline to find an employer's conduct to be actionable unless it is "calculated to coerce an employee to do something illegal"; "[t]his reluctance seems to be grounded in a fear that, if the anxiety and stress resulting from discipline, job transfers, or even terminations could form the basis of an action for emotional distress, virtually every employee would have a cause of action."  *Welsh v. Commonwealth Edison Co.*, 713 N.E.2d 679, 684 (Ill. App. Ct. 1999).  *See also Edwards v. Commonwealth Edison*, No. 15 C 3260, 2015 WL 6445417, at *3 (N.D. Ill. Oct. 23, 2015)(noting that "Courts

police the line of 'extreme and outrageous' conduct, particularly where employers are involved, only allowing especially abusive and atrocious transgressions to survive a motion to dismiss . . .").  As a general proposition, the Court would agree that work place discussions initiated by supervisors concerning an employee's sexual activity can be offensive (though not necessarily extreme and outrageous). But here, given the nature of staff complaints about Plaintiff, Hester and Brumfield had no choice but to raise those topics.  Under the circumstances, even if such discussions could rise to the level of "extreme and outrageous" (and the case law suggests that they ordinarily would not), they do not support an intentional infliction of emotion distress claim.  And there is nothing else in the record to support Plaintiff's claim.

Moreover, there is no evidence that Hester intended to inflict severe emotional distress.  Nor does the record include evidence showing that Plaintiff actually suffered severe emotional distress.  The Illinois Supreme Court has long instructed that, to give rise to liability, the emotional distress suffered by a plaintiff "must be severe."  *Public Finance Corp. v. Davis,* 360 N.E.2d 765, 767 (1976). "Although fright, horror, grief, shame, humiliation, worry, etc., may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable"; "[t]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it."  *Id.*  Plaintiff alleges that he "has suffered mentally, emotionally and physically due to the actions of Defendants and the effect the damaging, false, defamatory slanderous email will have on his

future." Complaint [11], ¶133. He alleges that he has experienced "many sleepless nights, headaches, upset stomach, loss of appetite, emotional and mental distress, and continued worrying over the slanderous, defamatory false statements made against him, and the effect it had on his new position." *Id.* ¶134. These allegations alone, even if true, do not suggest the level of distress required under the law.[2]

Defendants are entitled to judgment as a matter of law on Count XI.

---

[2] The record includes several affidavits, which Plaintiff attached to his Complaint. Plaintiff submitted his own affidavit, which states that he "cannot eat, I am having nightmares, problems sleeping. I want to be alone, when previously I was a social butterfly. The damage is intense. I am humiliated, damaged beyond imagination and I don't know what my future holds." Sworn Affidavit of Gregory Alex, p. 2 (attached to Plaintiff's Complaint at Exhibit C). His mother submitted an affidavit stating that Plaintiff is depressed, has trouble eating and keeping food down and has lost weight; she stated that she has never seen him so "down and out." Sworn Affidavit of Stanlene Alex, ¶¶7, 9, 14. Plaintiff's brother states in another affidavit that Plaintiff "has slipped into a depressive state." Sworn Affidavit of Jaleel Muhammad, ¶2. Putting aside the competence of such evidence (which is clearly designed to go to the truth of the sexual harassment complaint and not to Hester's justification for firing Plaintiff), these statements simply do not establish the level of distress required to impose liability on an employer.

IV.    Conclusion

For the reasons explained below, the Court finds that Defendants are entitled to judgment as a matter of law on all of the claims asserted in Plaintiff's complaint. Defendants' summary judgment motion [58] is granted.  Judgment is entered in favor of Defendants and against Plaintiff.  All other pending motions, including Plaintiff's motion to strike and dismiss Defendant's affirmative defenses [36], are denied as moot.  Civil case terminated.

Dated: February 29, 2016

Entered:

_____
John Robert Blakey
United States District Judge